CARTER *v.* MOORE *et al.*

(Division B. Oct. 10, 1938. Suggestion of Error Overruled October 24, 1938.)

[183 So. 512. No. 33287.]

J. M. Forman, of Indianola, W. A. Stigler, of Tunica, and Julian C. Wilson, of Memphis, Tenn., for appellant.

114

116

**Dulaney & Bell,** of Tunica, for appellees.

118

Argued orally by **Julian C. Wilson**, for appellant, and by **J. W. Dulaney**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant filed his bill in the Chancery Court of Tunica County against appellees to confirm his tax title claim to 780 acres of land in that county, being all of fractional Sections 29 and 30 in Township 5, Range 12; the land in each section adjoins the land in the other and constitutes one body of land, 580 acres of which is in Section 29, and 200 acres of which is in Section 30. Appellees filed an answer and cross bill denying the validity of appellant's title and setting up title in themselves, which they prayed to be confirmed. Appellant answered the cross bill denying its material allegations. There was a final hearing on the pleadings and evidence resulting in a final decree in favor of appellees confirming their title. From that decree appellant prosecutes this appeal.

Appellant contends that he got a valid tax title, and, if mistaken in that contention, the claim of title by appellees was barred by the three-year statute of limitations. Hemingway's Code of 1917, Section 2459; Section 2288, Code of 1930.

Appellant's claim of title is based on two tax deeds, one growing out of the land tax sales of 1921, and the other out of the land tax sales of 1930.

At the time of his death in 1915, J. W. Bennett owned the land. By his will he devised it to his widow, Mrs. Clara Bennett for life or widowhood, with remainder to the children of his two nieces living at the death of his wife, and the descendants of such children who should die before his wife. Mrs. Bennett died in January, 1936. The appellees are the four children of J. W. Bennett's two nieces. For the years 1919-20 the land was assessed to estate of J. W. Bennett, that in Section 29 at a valuation of $8,705, that in Section 30 at a valuation of $2,520. At the tax sales in 1921, the land was sold for its taxes. The taxes and damages on that part in Section 29 were $194.31, on the part in Section 30, $56.53. Mrs. Dora Sav-

age purchased the land in Section 29 bidding the amount of taxes and damages due thereon, and L. S. Lake purchased that in Section 30, bidding the amount of taxes and damages due thereon, each receiving a separate deed describing the land sold and the consideration bid.

Through conveyances from Mrs. Savage and Lake, J. T. Puckett acquired whatever title they had by virtue of said tax sales. For the years 1928-29, the entire tract was assessed to J. T. Puckett, that part in Section 29 at a valuation of $6,756, and that part in Section 30 at a valuation of $1,440. The taxes thereon being delinquent, the land was sold at the tax sales in April, 1930, for the taxes, damages, and costs due thereon. The assessment rolls showed opposite the land in Section 29 the amount of taxes and damages charged against it—$156.46, and that in Section 30 showed its taxes and damages to be $35.12. Appellant was the purchaser of the lands in both sections, receiving from the tax collector two separate deeds thereto, one for the land in Section 29, and the other for the land in Section 30, each reciting as the consideration for the conveyance the taxes and damages due on the land conveyed.

Section 3249 of the Code of 1930, which was Section 6962 of Hemingway's Code of 1917, provides, among other things, as follows: ''On the first Monday of April, if the taxes remain unpaid, the collector shall proceed to sell the land, or so much and such parts of the land, of each delinquent taxpayer, as will pay the amount of taxes due by him, and all costs and charges, to the highest bidder for cash. He shall first offer forty acres, and if the first parcel so offered do not produce the amount due, then he shall offer another similar subdivision and so on until the requisite amount be produced, or until all the land constituting one tract and assessed as the property of the same owner be offered.''

Was each of the tax sales—that of 1921 and that of 1930—made in violation of this statute and for that reason void? We are of the opinion that both of those ques-

tions should be answered in the affirmative. The tax deeds were in the statutory form laid down by Hemingway's Code of 1917, Section 6966, and Section 3273 of the Code of 1930. Leaving off the caption and the blanks for the date and the name of the officer making the conveyance, the form follows: "Be it known, that ———, tax collector of said county of ———, did on the ———, day of ———, A. D. ———, according to law, sell the following land, situated in said county and assessed to ——— to wit: ——— (here describe the land) ——— for the taxes assessed thereon (or when sold for other taxes it should be so stated) for the year A. D. ———, when ——— became the best bidder therefor, at and for the sum of ——— dollars and ——— cents; and the same not having been redeemed, I therefore sell and convey said land to the said ———."

It is at once manifest that the statute was violated in the making of the 1921 sales, for the deeds themselves show that there were two separate and distinct sales— one sale of that part of the tract in Section 29, and another and different sale to that part of the tract in Section 30, one person purchasing that in Section 29, and another person purchasing that in Section 30, the consideration for each sale being the amount of taxes and damages due on the particular piece of land sold. And we think it equally plain that the statute was violated in the making of the 1930 sales.

Appellant received two deeds from the tax collector, one conveying to him the land in Section 29, and the other conveying the land in Section 30, the consideration in each being the amount of taxes and damages due on the particular piece of land conveyed. If there had been only one sale complying with the statute, and two deeds to the purchaser, we might have a different question. To hold that the statute was complied with would mean that the recitals in the deeds were false. If the statute had been complied with in the making of the sales, and two deeds made instead of one, each should

have recited as the consideration the aggregate amount of taxes and damages due on the whole tract, instead of reciting the amount of taxes and damages due on the particular tract conveyed. In other words, the consideration in each deed should have been the same. Appellant lay stress on the fact that the conveyances recite that they were made "according to law." That phrase is not a statement of fact; it is a mere conclusion or opinion and must yield to the positive statement of facts in the deeds, which show in unmistakable terms that two sales were made instead of one, each for a separate and distinct consideration. Both tax sales were void and the purchaser therefore got no title. Gregory v. Brogan, 74 Miss. 694, 21 So. 521; House v. Gumble, 78 Miss. 259, 29 So. 71. We do not understand that Lewis v. Griffin, 103 Miss. 578, 60 So. 651, is in conflict with either of those decisions. In that case, there were two tracts separately assessed and conveyed by the tax collector to a purchaser at their sale for delinquent taxes by one deed. The court held that those facts did not raise a presumption that the two tracts were not sold separately as required by the statute since there was no statute requiring separate deeds to be made to each tract sold.

Appellant argues that even though the tax deeds conveyed no title, appellees are barred by the three-year statute of limitations, Section 2288, of the Code of 1930, which is in the following language: "Three years' actual occupation under a tax title bars suit.—Actual occupation for three years, after two years from the day of sale of land held under a conveyance by a tax collector in pursuance of a sale for taxes shall bar any suit to recover such land or assail such title because of any defect in the sale of the land for taxes, or in any precedent step to the sale, saving to minors and persons of unsound mind the right to bring suit within such time, after the removal of their disabilities, and upon the same terms as is provided for the redemption of land by such persons." The evidence tended to show actual occupation

by appellant of the land for three years after the expiration of the period of redemption. It was shown, however, without conflict that appellees filed their cross bill in this case within three years after the death of Mrs. Bennett, the life tenant. Appellant's position is that under the statute there is no saving in favor of remaindermen. The three-year statute of limitations is a part of the code chapter on limitations of actions and is a mere statute of limitations. Hamner v. Yazoo Delta Lumber Company, 100 Miss. 349, 56 So. 466. It comes within the general scope and purpose of the entire chapter. There is no decision of this directly in point, but we think Clark v. Foster, 110 Miss. 543, 70 So. 583; and Jordan v. Bobbitt, 91 Miss. 1, 45 So. 311, are strongly persuasive that the statute was not intended to cut off remaindermen. There was involved in the Bobbitt Case a two-year statute of limitations, which provided that no action should be brought for the recovery of property sold by an order of the Chancery Court, except within two years from date of sale. The Clark Case also involved the rights of remaindermen under a statute of limitations (Section 3123 of the Code of 1906). The court held in both cases a right of action of the remaindermen did not accrue until the death of the life tenant. We are unable to see any good reason why this same rule should not be applied to the statute of limitations here involved. We do not think the word "assail" adds any force to the statute. Without it the statute would mean the same thing.

Affirmed.