Cox *v.* Richerson *et al.*

(Division B. Oct. 2, 1939. Suggestion of Error Overruled Oct. 16, 1939.)

[191 So. 99. No. 33793.]

J. D. Magruder, of Tunica, and W. W. Venable, of Clarksdale, for appellant.

James McClure, of Sardis, for appellees.

Argued orally by **W. W. Venable**, for appellant, and **James McClure**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This is an appeal from a final decree of the Chancery Court of Tunica County cancelling conveyances of the tax collector to the appellant, J. J. Cox, and awarding possession of lands to the appellees, together with judgment for $296.21, a finding of the excess value of the use and occupation over the credits for taxes and by the chancellor amounted to $296.21, and judgment was rendered for same.

George W. Coleman died seized and possessed of the lands involved, and by his will devised to his wife, Mrs. Carolina Coleman, for life, the lands involved, with the remainder in fee to Lois Laverne, Willie Bob, and Annie Lee Richerson, share and share alike.

The lands involved in this suit were assessed to George W. Coleman for the year 1930, and tax not having been

paid thereon the tax sale was made on the 6th day of April, 1931, and the appellant, Cox, became the purchaser through his agent, an attorney of the Tunica County Bar. The lands lay contiguous to each other in one body, consisting of 200 acres, but they were assessed on three different lines or assessments on the tax rolls, and each of the three tracts separately valued, and taxes were levied against each separate tract according to the separate valuation. The tax collector made three separate conveyances. One of the deeds made by the tax collector will serve to show the manner in which the conveyances were made, which reads as follows:

"State of Mississippi.

"County of Tunica

"Be it known, that I, T. E. Salmon, the Tax Collector of the said County of Tunica, Mississippi, did, on April 6, 1931, A. D., according to law, sell the following land, situated in said county and assessed to G. W. Coleman, to-wit: N½ of SE¼ Sect. 23, T. 6, R. 11 for the ad valorem taxes assessed thereon for the year A. D., 1930, when J. J. Cox became the best bidder therefor and the purchaser thereof, at and for the sum of One Hundred Forty Nine Dollars and nine cents. I therefore sell and convey said lands to the said J. J. Cox.

"Given under my hand, the 22nd day of April, 1931, A. D. 192—.

"T. E. Salmon,
"Tax Collector."

The deed was acknowledged and recorded. In like manner, the tax collector conveyed to said J. J. Cox the Northeast Quarter of the Southeast Quarter of Section 22, Township 6, Range 11, for the ad valorem taxes assessed thereon for the year 1930, in the sum of $71.74. The second deed is in the language of the first, with the exception of the description of the property, and the amounts of taxes.

In like manner the tax collector executed another deed to J. J. Cox on land described as the North half of the Southwest Quarter of Section 23, Township 6, Range 11,

for the ad valorem taxes assessed thereon for the year 1930 in the sum of $156.30. This deed is in the same language as the first two, with the exception of the description and the amount of taxes. In other words, the tax collector's deeds show that he sold each of the tracts separately for the taxes thereon and not for the entire tax of the taxpayer, G. W. Coleman. All of the said lands were on the assessment roll, assessed to the same owner, but the lands and assessment of each tract appeared on separate lines of the assessment roll and were separately valued by the assessor.

The lands were not redeemed by the appellees and on the expiration of the term for redemption, the purchaser, J. J. Cox, placed a tenant in possession of the lands, renting same to the tenant, Oswald Brothers, for the year 1933, and rented the same during the years 1934 and 1935 to the brother of the purchaser, and that the appellant, Cox, did not actually himself occupy the lands until January, 1936.

The appellee, Lois Laverne Richerson, was born on November 23rd, 1915, and arrived at twenty-one years of age on November 23rd, 1936. A suit was filed by the appellees in May, 1938. On the trial of the case, the appellant sought to show by his attorney and agent, who bought the land for him at the tax sale, that the sheriff offered the lands by offering first 40 acres on which he did not receive a bid, and then by adding another forty and offering the same anew, and receiving no bid, and so on until each of the offers, an addition of forty acres on each offer, amounted to the whole 200 acres, whereupon it was struck off to the appellant, Cox. The court permitted the witness to testify but held the testimony incompetent and excluded it from consideration.

The court further held that the tax sale was void and that none of the appellees were barred by the three year statute providing that after three years from the expiration of the period for redemption followed by occupancy of the buyer, holding that Sec. 2288, Code of 1930, was

not applicable for the reason that the buyer did not occupy the tract in person and that his occupancy by a tenant did not comply with Section 2288.

It is insisted by the appellant that the court was in error in not admitting the testimony of the attorney and agent of the appellant to show the manner of the actual sales, and that it was immaterial that the sheriff executed deeds to the three separate tracts separately, and also contends that the court was in error in holding that Sec. 2288 did not apply, and that the court should have held that possession and occupancy through a tenant was occupancy by the buyer.

Section 3249 of the Code of 1930 reads as follows: "How sale made.—On the first Monday of April, if the taxes remain unpaid, the collector shall proceed to sell the land or so much and such parts of the land, of each delinquent taxpayer, as will pay the amount of taxes due by him, and all costs and charges, to the highest bidder for cash. He shall first offer forty acres, and if the first parcel so offered do not produce the amount due, then he shall offer another similar subdivision and so on until the requisite amount be produced, or until all the land constituting one tract and assessed as the property of the same owner be offered. Upon offering the land of any delinquent taxpayer, constituting one tract, if no person will bid for it the whole amount of taxes and all costs, the collector shall strike it off to the state. The sale shall be continued from day to day within the hours for sheriff's sales until completed; but neither a failure to advertise nor error in the advertisement, nor error in conducting the sale, shall invalidate a sale at the proper time and place for taxes, of any land on which the taxes were due and not paid; but a sale made at the wrong time or at the wrong place shall be void. And any person sustaining damage by reason of any failure or error of the tax collector may recover damages therefor on his official bond."

It will be noted from a reading of the section that the

tax collector shall proceed to sell the land, or so much and such parts thereof, of each delinquent taxpayer, as will pay the amount of taxes *due by him,* and all costs and charges, to the highest bidder for cash, etc. The statute intends that land of the delinquent taxpayer shall be offered in the manner pointed out by the statute of subdivisions of forty acres for the whole tax due by the delinquent taxpayer. It does not contemplate selling the land only for taxes accruing on the particular part of the land on which the delinquent tax is impressed. It will further be noticed that if the first parcel so offered does not produce the amount due, then the sheriff shall offer another similar division and so on until the requisite amount be produced, or until all of the lands constituting one tract and assessed as the property of the same owner be offered, and if upon offering the land of the delinquent taxpayer, constituting one tract, no person will bid for it the whole amount of the taxes and all costs, the collector shall strike it off to the state.

It is insisted by the appellant that under Section 3120 the lien for taxes created by Section 3120 providing ". . . and all taxes assessed shall be a lien upon and bind the property assessed, from the first day of January of the year in which the assessment shall be made; and no property shall be exempt from distress and sale for taxes," only impresses the lien upon the particular property assessed, and that the lien so created only authorizes the tax collector to sell certain property upon which the lien is created by the statute. We do not think it necessary to discuss the question as to whether the lien created by that section and Section 3121 is the lien for all the taxes due by the taxpayer upon each part of his land or not. The power to seize and sell does not necessarily have relation to the lien created on the property. That would only be considered when a lienor's rights were affected and is not involved in this suit. By the statute mentioned, Section 3249, the tax collector, when the taxpayer is delinquent, on the first Monday in April

shall offer for sale the lands or sufficient of them, not exceeding forty acres at the time, until enough is produced to satisfy the amount of taxes due by him and all costs and charges. No property under the provision of Section 3120 is exempt from distress and sale for taxes. Consequently, Section 3249 requires the tax collector in selling the lands of the delinquent taxpayer to offer them in the manner therein provided, and a failure so to do renders the sale void.

This brings us to the question as to whether it was competent for the appellant to prove by his agent and attorney that lands were actually offered different from the manner in which the deeds recite the sale was made. In Bower et al. v. Chess & Wymand Co., 83 Miss. 218, 35 So. 444, parol evidence was offered to show that certain lands were sold for taxes of a year different from that stated in the deed, and the Court held that such testimony was inadmissible. In the second syllabus to that case it is said: "Parol evidence is not admissible to contradict the recital of a tax deed by showing that the sale was made for the taxes of a different year from the one recited in the deed." The Court in that case said: "Suppose, for example, the description in the tax deed was the N. E.¼ of a section, while in fact the N. W.¼ had been sold, and the defendant, in an ejectment suit, should admit that the writing of 'N. E.¼' was a clerical mistake, and that the N. W.¼ had really been sold; could there be any judgment in ejectment rendered for the recovery of the N. W.¼? Is there any difference in the principle because what is proposed to be admitted is the fact that the sale was made on the right day, though the deed recited the wrong day, or the fact that the sale was for the taxes of the right year, though the deed recited the wrong year? We write thus much as to these cases now, not to overrule them, since it is not necessary to a decision in this case to do so, but simply to save ourselves from being understood to assent to their doctrine in this particular respect. Here, however, the admission is

by way of demurrer only. The demurrer admits the truth of all the allegations in the bill which are well pleaded, for the purpose of the demurrer alone; and the allegation that the recital in the tax deed that the land was sold for the taxes of 1897 was a clerical mistake, and that the tax collector meant to write '1896,' and not '1897,' is an allegation not well pleaded, for the obvious reason that, if the facts were as stated in the allegation in the bill, they could not be proved by parol testimony, in contradiction to the recital of the deed, if objection were made. . . . It is impossible to escape the conclusion that if we should hold that the complainant in a bill to confirm a tax title, where the tax deed recites that the sale was for taxes of the wrong year, could, by averring that the tax collector had recited the wrong year by mistake, and that in fact the land had been sold for the taxes of the right year, and asking on this statement a confirmation of his title, successfully maintain such a bill, we would be practically holding that a tax deed could be reformed. The gist of such a bill, manifestly, would be that the tax collector had made a clerical mistake in reciting the year in which the land had been sold, that he had intended to recite the proper year, and that hence the court should write the deed as the tax collector meant to write it, and not as he actually had written it.''

It must be remembered in this case that the purchaser at the tax sale must stand upon his deed as written, and that a tax deed cannot be reformed. The deed shows on its face or purports to do so what was actually done, that is that each tract was separately sold for the tax due thereon, and not for the tax due by the delinquent taxpayer. Whatever the right of the tax-buyer may be— which we do not here decide—to compel the tax collector to make the deed in accordance with the facts as the tax-buyer understood them at the time, and through proper action promptly taken to have the tax collector, before executing the deed conform his official action thereto by reciting the true facts as against untrue facts,

he may not accept a deed showing on its face a void sale and then reform the deed to show facts contrary to the recitals of the deed. The chancellor was correct in this case in holding that this evidence could not be received. The recitals of the tax collector's deed here involved are not mere recitals of a consideration, but a recital of the action taken by the tax collector in the course of his official duty in making the sale, and the deed cannot be corrected in a proceeding like this, or in any other proceeding for the reformation of instruments. The tax-buyer must assert his rights through the deeds that he has received, and not otherwise. These recitals or terms of the tax collector's deed, which show what was done at the tax sale, cannot be varied by parol proof. Suppose, for instance, that the appellees had sought to redeem one or more of the tracts of land sold without redeeming the whole. Could they have tendered the amount of the tax shown in that deed with the cost and damages allowed by law and redeemed it separately? If the contention of the appellant were true, they could, but under the law, if the sale had been correctly made they would be required to redeem the whole or none because the land sold was sold, or should have been, for the entire tax due by the taxpayer. The tax collector's deeds or instruments of conveyance, and the terms showing the official action taken by the tax collector in selling the lands cannot be varied by parol evidence.

Consequently, the chancellor was correct in excluding the evidence of the appellant's agent and attorney as to what occurred at the sale.

We think the chancellor was in error in holding that the life tenant, Mrs. Carolina Coleman, was not barred by Section 2288, providing that three years actual occupation under a tax title bars suit. The words ''actual occupation'' used in Section 2288 do not require the tax-buyer to personally go upon and live upon the premises or personally to use them, but he may occupy the land by a tenant and the occupancy of his tenant is the oc-

cupancy of the tax-buyer. By analogy Section 2287 the general ten-year statute of limitations making "ten years' actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy" and so forth, uses the word "occupancy" in the same sense as the word "occupation" is used in Section 2288. The purpose of the Statute section 2288 is to require an actual possession as against the mere constructive possession under a paper title. There must be to set this statute in operation some person either the buyer, or his agent, assignee, or vendee, to go upon the premises and use the land in such manner as to show that parties are in possession under claim of right, and in such case the suit to show the tax sale void must be commenced within three years after the expiration of the time for redemption of the sale. Mrs. Coleman was a life tenant and under duty to pay the taxes on the whole estate, and while the land under a valid sale will have carried all interests where it was assessed as a whole and not a separate interest, and a valid sale, of course, would give title regardless of Section 2288. But that Section does not bar the remainderman where the tax sale is void. See Carter v. Moore et al., 183 Miss. 112, 183 So. 512. It was there stated in the fourth syllabus: "Suit by remainderman to whom land was devised to confirm title as against invalid tax title was not barred by three-year period of limitation, notwithstanding actual occupation by claimant under tax title for three years after expiration of period of redemption, where bill was filed within three years after death of life tenant, since statute of limitations was not intended to cut off remaindermen." The life tenant was entitled to the possession of the land for life and no possessory rights would exist in the remainderman until the termination of the life at stake. It is true they might file a bill to establish their rights as a remainderman as against a void tax sale, but they could not in such suit obtain possession. Their rights to the possession are not

in existence until the termination of the life of the life tenant. The life tenant, being under duty to pay the taxes and still living in this case when the suit was instituted and the decree rendered the tax-buyer at the tax sale after the three years provided by law for the bringing of suit to challenge the legality of the tax sale, or defenses therein, with no suit brought during such period cut the life tenant off from challenging the legality of the sale made so far as it affects her interest, and the tax-buyer would secure through the tax title after the expiration of said period the rights of the life tenant to the possession and use during her life and not otherwise.

It follows from these views that the chancellor was in the error in decreeing a cancellation as to the life interest of Mrs. Coleman, and in decreeing the amount over against the appellant for the sum above the amount of taxes based on the use and occupation value of the land during the term in which the appellant had occupied it of $296.21. Consequently, the decree of the chancellor will be reversed as to the decree rendered in favor of Mrs. Carolina Coleman and the decree adjudging $296.21 to be paid by the appellant, but will be affirmed as to the other appellees, except as in respect to the judgment for $296.21. The tax-buyer, the appellant, is entitled to use and occupation of the land during the life of the appellee, Mrs. Carolina Coleman.

Judgment will be reversed and decree rendered here in accordance with these views.

Reversed and rendered.