MODIFIED OPINION ON MOTION FOR REHEARING[1]
MYERS, J., for the Court.
¶ 1. This is an appeal from the Chancery Court of Lee County. The subject of this case is an encroachment by the Coxes onto land that Norris allegedly owns. The trial court originally concluded Marvin and Mary Cox had adversely possessed two portions of Samuel T. Norris’s property and awarded the Coxes fee simple title to these portions. The trial court later entered a supplemental judgment, reducing the land awarded to the Coxes. Both sides were unhappy with the new findings, so they then filed several post-trial motions either seeking relief from the judgment or to amend the supplemental judgment. After the chancellor denied these motions, both sides appealed to this Court. Both Norris in his appeal, and the Coxes, in their cross-appeal, cite identical issues:
I. WHETHER THE COXES MAY ADVERSELY POSSESS THE DISPUTED PROPERTY THROUGH ACTS OF THEIR EMANCIPATED CHILDREN AND RELATIVES.
II. WHETHER THE COXES CLAIMED OWNERSHIP IN THE DISPUTED PROPERTY.
III. WHETHER A SURVEY IS NEEDED TO ADEQUATELY DESCRIBE THE DISPUTED PROPERTY.
*321 The Coxes, in their counter-appeal, cite one additional issue:
IV. WHETHER THE COXES CLAIMED THE DISPUTED PROPERTY.
Statement of the Facts
¶ 2. On April 18, 1997, Samuel T. Norris bought two parcels of land in Lee County, Mississippi. The deed describes the first parcel (east parcel) as follows:
The east half of the east half of the southeast quarter of Section 9, Township 9, Range 6 east, in Lee County, Mississippi.
The deed describes the second parcel (west parcel) as follows:
The west half of the east half of the southeast quarter of Section 9, Township 9, Range 6 east, in Lee County, Mississippi.
¶ 3. After purchasing his property, Norris noticed structures on his property. Appellees/cross-appellants Lisha and Larry Woodard own a mobile home that sits in the southeast corner of the Norris parcel. David and Elizabeth Cox occupy the mobile home. Additionally, a wood-frame shop, a mobile home, and a camper were found on the south central portion of Norris’s property.[2] This mobile home was owned by Kathey Mashburn and occupied by Jeffrey Jackson. Harold Jackson lived in the camper, which was located near the shop.
¶4. The Coxes bought their parcel of land on August 27, 1971. It is described as:
One (1) acre in the extreme northeast corner of the Northeast Quarter of Section 16, Township 9, Range 6 East, Lee County, Mississippi. Said land is bound on the east by the Quarter Section line, on the south and west by a public road and on the north by the quarter section line.
Said tract contains one acre, more or less.
¶ 5. After the purchase, the Coxes, along with their five children, had to clear the land because it was overgrown and strewn with garbage. The Coxes allege that they performed other acts associated with possession on the disputed property, such as cut trees for firewood and mowed grass and vines on hills.
¶ 6. An old fence ran around the Coxes’ property down in the hollow between the Coxes’ house and David Cox’s mobile home. The Coxes assumed that this was the northern boundary of their property. This fence, however, is now in an advanced state of disrepair. Only three or four portions of the fence remain, and these are pieces of a single strand of barb wire sticking approximately three inches out of a tree.
¶ 7. Beginning in 1971, Marvin Cox used the disputed land for storing vehicles and boats. Evidence was presented that various Cox children and some grandchildren have lived on the disputed property in mobile homes from 1973 to the present. The mobile homes were placed either in the southeast corner of the disputed property (where David Cox presently fives) (the “east trader site”) or in the south-central portion of the property (where Jeffery Jackson presently fives) (the “west trailer site”). Although there were times when no one occupied the mobile homes, there was always a mobile home on at least one site.
*322 ¶ 8. Additionally, Marvin Cox began construction of a shop on the west trailer site in 1984. This shop was used for storage and various types of mechanical work.
¶ 9. In her original ruling, the chancellor gave title to both the east and west trailer sites to Cox. In a supplemental ruling, issued December 7, 2000, the chancellor reconsidered and granted title of only the shop building, the roadway to it, and fifteen feet surrounding the shop to Cox. Title to the remaining disputed property was quieted in favor of Norris.
Standard of Review
¶ 10. It is well established that this Court will not reverse a chancellor’s findings unless they are clearly erroneous. Sproles v. Sproles, 782 So.2d 742, 746(¶ 12) (Miss.2001) (citing Dillon v. Dillon, 498 So.2d 328, 329 (Miss.1986)). The supreme court has illustrated this standard by saying, “a finding of fact is ‘clearly erroneous’ when ‘although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made.’ ” Id. at 746(¶ 13) (quoting In re Estate of Taylor, 609 So.2d 390, 392 (Miss.1992)) (quoting UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc., 525 So.2d 746, 754 (Miss.1987)).
Legal Analysis
I. WHETHER THE COXES MAY ADVERSELY POSSESS THE DISPUTED PROPERTY THROUGH ACTS OF THEIR EMANCIPATED CHILDREN AND RELATIVES.
¶ 11. The Mississippi Supreme Court has listed six elements that a claim of adverse possession must meet to be successful: the possession must be (1) under claim of ownership; (2) actual or hostile; (3) open, notorious, and visible; (4) continuous and uninterrupted for a period of ten years; (5) exclusive; and (6) peaceful. Crump v. State, 823 So.2d 1213, 1215(¶ 9) (Miss.Ct.App.2002). Crucial to our discussion are the fourth and fifth elements — that is, whether acts of an emancipated child or relative may count for exclusive, continuous and uninterrupted possession.
¶ 12. Our research failed to produce any Mississippi cases which would allow a parent to claim actions of their children or relatives so the parents may claim adverse possession of property. However, one may adversely possess through the acts of one’s agent. Cox v. Richerson, 186 Miss. 576, 191 So. 99, 104 (1939). We must now determine whether an emancipated child or other relative may serve as one’s agent for adverse possession.
¶ 13. An “agent” has been defined as “a business representative who handles contractual arrangements between the principal and third persons.” Brian A. Garner, A Dictionary of Modern Legal Usage 38 (2d ed.1995). In case law, the term has been defined as:
A person authorized by another (principal) to act for or in place of him; one entrusted with another’s business.... A business representative, whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between principal and third persons.... One who deals not only with things, as does a servant, but with persons, using his own discretion as to means, and frequently establishing contractual relations between his principal and third persons. One authorized to transact all business of principal....
State v. Brooks, 781 So.2d 929, 934(¶ 12) (Miss.Ct.App.2001) (citing Restatement (Second) of Agency § 1 (1958); 2A C.J.S. Agency §§ 4-5 (1972)). The latest revision of the Restatement elaborates:
*323 Agency is the fiduciary relationship that arises when one person (a “principal”) manifests assent to another person (an “agent”) that the agent shall act on the principal’s behalf and subject to the principal’s control, and the agent manifests assent or otherwise consents so to act.
Restatement (Third) of Agency § 1 (Tentative Draft No. 2, 2001).
¶ 14. This Court finds that the key to these different definitions of this broad and sometimes vague term is that the agent acts on the principal’s behalf and is subject to the principal’s control. Given the facts of this case, we find that the chancellor was acting within her discretion when she found that the Cox children were not acting as Marvin Cox’s agents. By definition, an emancipated child is no longer under its parent’s control. Cf. Miss. Code Ann. § 41 — 41—61(b) (Rev.2001) (“ ‘Emancipated minor’ means any minor who is or has been married or has by court order or otherwise been freed from the care, custody and control of her parents.”). Nor can it be said that the Cox children were acting for their mother and father by simply living on the disputed property. There were no obligations imposed on the children. The Coxes merely allowed their children to live on land which they claimed.
¶ 15. The evidence showed that the only part of the disputed property which Marvin Cox had secured for his own use was the shop building. While he also allowed his children and in-laws to store things in the building, it was built and used with the understanding that he claimed the property. All elements for adverse possession of the property on which the shop sits have been met. Therefore, the judgment of the chancellor, in so far as ownership of the disputed property is concerned, is affirmed.
II. WHETHER THE . COXES CLAIMED OWNERSHIP IN THE DISPUTED PROPERTY.
¶ 16. Norris claims that the Coxes, on at least two occasions, disclaimed ownership to the disputed property. Therefore, he argues, they could not adversely possess the property if they did not claim it. The first occasion which Norris describes is Marvin Cox offering to purchase the west trailer site from him. Norris’s description of the conversation was corroborated by Kenneth Houston, a disinterested neighbor.
¶ 17. Norris also describes the occasion when Marvin Cox, armed with a shotgun, threatened an appraiser from the Lee County Tax Assessor’s office. The appraiser was attempting to appraise the west trailer site when Cox threatened him. Cox then followed the appraiser to the shop. The appraiser told Cox that the property was not his. Cox simply told the appraiser to get out of the area.
¶ 18. This testimony that Cox may not have affirmatively claimed all the property at all times constituted evidence to be considered in determining the validity of the adverse possession claim along with all other testimony offered by the parties. These incidents highlighted by the Norris-es are sufficiently ambiguous that they do not dominate over all other evidence.
III. WHETHER A SURVEY IS NEEDED TO ADEQUATELY DESCRIBE THE DISPUTED PROPERTY
¶ 19. Norris argues that the Coxes have not met their burden of proof since they did not have a survey to describe the land which they claimed. Indeed, over the course of the pleadings in this case, the Coxes even increased the amount of land which they claimed to adversely possess: There is some merit in *324 this argument. “Possession is defined as ‘effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses. It includes control over the land and the intent to exclude others except with the occupant’s consent.’ ” Blankinship v. Payton, 605 So.2d 817, 819-20 (Miss.1992) (quoting George A. Pindar, American Real Estate Law, §§ 12-13 (1976)). However, a survey is not needed to delineate a claim of adverse possession where established monuments and boundaries can be used to describe the parcel. See Cheatham v. Stokes, 760 So.2d 795, 799(¶ 20) (Miss.Ct.App.2000) (chancellor found evidence of an old fence to be sufficient to delineate boundaries of disputed property).
¶ 20. In the instant case, the only boundaries in dispute were the north boundary and part of the west boundary of the Coxes’ land. The Coxes introduced evidence of an old fence line that was found to the north of both trailer sites. Additionally, the chancellor walked the disputed property and saw it for herself. The chancellor must evidently have found the evidence of the old fence to be insufficient. Impliedly, she found the only definite area the Coxes could claim was that on which the shop sat. Construction on the shop began in 1984. Therefore, it was well within her discretion for the chancellor to find the Coxes had acquired title to the land on which the shop sat.
IV. WHETHER THE ■ COXES CLAIMED THE DISPUTED PROPERTY
¶ 21. We are not sure what the Coxes are asking us to decide. Taking the issue literally, then the answer is an obvious “yes.” Why else would they bother contesting the original action, let alone file an appeal, if they did not claim the property? Reading the brief, it appears that the Coxes mean to phrase the issue as “whether the Coxes’ possessed the disputed property in an open and notorious manner.” We will use this interpretation.
¶ 22. We hold the question of whether .the character of possession was “open, notorious, and visible” to be one of fact. This Court will uphold the chancellor’s finding if substantial evidence supports it and is not clearly erroneous. Johnson v. Black, 469 So.2d 88, 90 (Miss.1985).
¶ 23. Contradictory evidence was presented, including evidence that the Coxes offered to buy some land from Norris. The chancellor was in the best position to weigh the credibility of the witnesses, and it is up to her to decide who to believe. We will not try to second-guess her.
¶ 24. We note that it appears from the chancellor’s findings that she did think the possession was open and notorious. What the chancellor found determinative was that the Coxes could not claim possession through the acts of their children.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED AS TO BOTH THE DIRECT APPEAL AND THE CROSS-APPEAL. COSTS OF THE APPEAL ARE ASSESSED ONE HALF TO THE APPELLANT AND ONE HALF TO THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, AND GRIFFIS, JJ., CONCUR. CHANDLER, J„ NOT PARTICIPATING.

. The original opinion is withdrawn and replaced by this opinion. Rehearing is denied.

. The mobile home is 33.7 feet north of Norris's southern boundary, and the shop is 29.4 feet north of the southern boundary.