MYERS, J.,
for the Court.
¶ 1. Cleveland L. Lloyd filed this action against Walter “Chip” Gibbes in the Chancery Court of the First Judicial District of Hinds County, Mississippi on August 4, 2000, in an attempt to obtain the deed to a tract of land measuring 3.5 acres. Lloyd had previously leased this real property from Gibbes for a period of approximately two years. In his complaint, Lloyd alleged that he and Gibbes entered into a contract for deed on July 11, 1991, and that Lloyd would pay Gibbes all consideration due on or before August 11, 1997. Lloyd further alleged that he paid all consideration due by making monetary payments as well as by repairing Gibbes’s tractors. Lloyd’s complaint stated that he was entitled to all money due in quantum meruit for the repair work performed should Gibbes deny the existence of a contract. Lloyd further maintains that in reliance on Gibbes’s promise to deliver the deed to the real *588 property, he purchased a house, the closing of which subsequently failed and he sustained monetary damages of $112,000. Lloyd asserts in his complaint that he and Gibbes did not enter into a lease and requested a stay of the County Court of Hinds County proceedings for eviction which were pending execution.
STATEMENT OF FACTS
¶ 2. On June 1, 1989, Lloyd and Gibbes entered into a lease agreement for the subject property. On July 11, 1991, the two entered into an written agreement for Lloyd to purchase the property for $7,100 by a term of 72 monthly payments of $189 each. In the sales agreement, Lloyd agreed to move a house which he obtained, to the subject property no later than December 31, 1991. On August 3, 1992, Gib-bes wrote to Lloyd stating that Lloyd had breached the contract by failing to move the house to the property as agreed, as well as by failing to make payments on the real property. Gibbes stated that he therefore had no intention to continue with the sale of the real property. Gibbes further stated in his August 3, 1992 letter that he would be willing to renew the 1989 lease with Lloyd on a yearly basis, while reserving the right to renegotiate the lease at the end of any lease year. Lloyd and Gibbes presumably had no further disputes until January 16,1997.
¶ 3. On January 16th, Lloyd wrote Gib-bes a letter demanding $128,000 for Gib-bes’s alleged theft of two movers beams Lloyd needed in order to move the house he had obtained. On February 3, 1997, in response to Lloyd’s demand letter, Gibbes, through his attorney, denied taking Lloyd’s movers beams and notified Lloyd that his lease would expire on May 30, 1997, but that a new draft of the lease agreement would be available, should Lloyd wish to continue leasing the real property. The revised lease agreement was mailed to Lloyd on March 25, 1997, but he made no response. On May 9, 1997, Gibbes’s attorney mailed Lloyd a letter informing Lloyd that he would be expected to vacate the property within sixty days of receiving the letter. The letter was mailed via certified mail, return receipt, but was never accepted by Lloyd.
¶ 4. Lloyd later attempted to get Gibbes to sign a quitclaim deed for fifty three and one-half acres. The additional fifty acres presumably represents an amount of land proportionate to the $128,000 Lloyd felt he had been damaged by Gibbes. Once again, Lloyd and Gibbes ran into problems. On October 19, 1998, Lloyd wrote Gibbes a letter demanding access to Gib-bes’s real property so that Lloyd could inspect a bridge on Gibbes’s property, under which he thought Gibbes had stashed the lost movers beams, and stating that it was his intention to sue. Gibbes’s attorney responded to Lloyd’s letter informing Lloyd that he did not have permission to enter Gibbes’s real property and that if he was in disagreement with the terms of the lease, Gibbes should address his concerns to the attorney.
¶ 5. After ten years of a tenancy agreement which can be described as chaotic at best, Gibbes decided that it was time to cease renewal of the lease agreement. On March 3, 1999, Gibbes’s attorney wrote to Lloyd, informing him that the lease would not be renewed when it expired on June 1, 1999. Lloyd responded to this letter by stating that he did not have a lease with Gibbes, that rather he was the rightful owner of the real property and Gibbes had failed to deliver a deed. Subsequently, Gibbes filed suit against Lloyd in the County Court of the Second Judicial District of Hinds County and obtained a judgment for Lloyd’s eviction on June 23, 2000. Lloyd subsequently filed suit, which is the *589 basis of this appeal, in the Chancery Court of the First Judicial District of Hinds County in which Gibbes’s motion to dismiss was granted. It is from the granting of Gibbes’s motion to dismiss which Lloyd appeals, raising the following issue:
I. WHETHER THE CHANCERY COURT COMMITTED REVERSIBLE ERROR IN GRANTING GIBBES’S MOTION TO DISMISS.
¶ 6. Finding no reversible error, we affirm the judgment.
LEGAL ANALYSIS
I. WHETHER THE CHANCERY COURT COMMITTED REVERSIBLE ERROR IN GRANTING GIBBES’S MOTION TO DISMISS.
¶ 7. Lloyd raises two sub-arguments in support of his argument that the chancery court committed reversible error by granting Gibbes’s motion to dismiss. Lloyd first argues that sufficient proof was presented that he fulfilled his obligations under the contract to Gibbes. Secondly, Lloyd argues that there was no evidence presented that Gibbes made an adverse entry upon the land occupied by Lloyd, thus tolling the statute of limitations on this action.
STANDARD OF REVIEW
The findings of a chancellor will not be disturbed or set aside on appeal unless the decision of the trial court is manifestly wrong and not supported by substantial credible evidence or unless an erroneous legal standard was applied. Where there is substantial evidence to support the chancellor’s findings, this Court is without the authority to disturb his conclusions, although this Court might have found otherwise as an original matter. Muirhead v. Vaughn, 878 So.2d 1028, 1030(¶ 8) (Miss.Ct.App.2004) (citing Memphis Hardwood Flooring Co. v. Daniel, 771 So.2d 924, 930(1118) (Miss.2000)).
DISCUSSION
¶ 8. We first address Lloyd’s sub-argument asserting that dismissal was improper based upon the lack of evidence that Gibbes made an adverse entry upon the land occupied by Lloyd, thereby tolling the statute of limitations. Lloyd argues that Gibbes was not entitled to a judgment of dismissal as a matter of law, because the applicable statute of limitations under Mississippi Code Annotated § 15-1-7 (Rev. 2003) is ten years, and his actions were in accordance with the statute of limitations.
¶ 9. In support of his argument, Lloyd cites the case of Leech v. Masonite Corp. which states that “[statutes of limitation do not begin to run against one in actual or constructive possession of lands until an adverse entry has been made.” Leech v. Masonite Corp., 219 Miss. 176, 184, 68 So.2d 297, 300 (1953). While this is the correct rule for some situations, it is not applicable in the present case. As demonstrated by the facts, the land sale was not conducted by using a deed and a deed of trust. Rather, the parties agreed to conduct the sale through contract. Mississippi Code Annotated § 15-1-7 states that the applicable statute of limitations is ten years when one is trying to recover land. We note that title in the real property never vested in Lloyd, as he failed to perform the contract. Lloyd has no real property to recover; therefore, § 15-1-7 is not the proper statute of limitations. Rather, Mississippi Code Annotated § 15-1-49 (Rev.2003) is the proper statute of limitations and the chancellor properly determined § 15-1-49 to apply.
¶ 10. Lloyd argues, through a two step process, that the trial court’s *590 determination that § 15-1^19 governs was improper. Lloyd’s second sub-argument states that there was sufficient evidence presented that he had fulfilled his obligations under the contract. The only evidence which was presented at trial supporting Lloyd’s claim that he had performed under the contract was Lloyd’s own testimony stating that he had made all of the payments, but all of his receipts were in his file with his former lawyer, who is now deceased. Interestingly, Lloyd testified as follows:
Q. Were you able to get your receipts back from Mr. Carmichael?
A. No.
Q. Do you understand that the receipts were lost?
A. I know, yes, sir.
Q. Were they lost by any fault of your own?
A. No, sir.
Q. Just unfortunate that your attorney died.
A. Just happened.
Q. Okay. Do you know how many receipts you delivered to Mr. Carmichael?
A. It was over 20; I’d say about 20 or 25, something like that, in that neighborhood. I’m pretty sure it was — the last count I had I can remember it was about 22 or 23.
Q. And of those receipts, would any of those receipts be for less than the $139 that you were supposed to pay in the contract?
A. They were all $139.
Giving Lloyd the benefit of the doubt, that only twenty-two receipts were lost, when the receipts which are present in the record, Lloyd’s claim of twenty-two lost receipts, and the amount of bartered work which Lloyd claims to have performed are added up, Lloyd would have paid $9,580 on a $7,100 contract. Lloyd takes issue with the fact that Gibbes was unable to produce any receipts evincing any payments on the contract. Gibbes stated that any receipts which he may have possessed had been destroyed due to the length of time from when they were originally written. Gib-bes’s secretary, Margaret Sue Dozier, testified that it was not their normal business practice to destroy business records. Lloyd argues that based on the differing testimony between Gibbes and Dozier, spoliation of evidence has occurred which would raise a presumption in his favor. In support of his contention, Lloyd cites the following:
It is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises a presumption, or, more properly, an inference, that this evidence would have been unfavorable to the case of the spoliator. Such a presumption or inference arises, however, only where the spoliation or destruction was intentional and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.
Tolbert v. State, 511 So.2d 1368, 1372-73 (Miss.1987).
If 11. While the above statement is a correct rule for some situations, it is not applicable in this ease. As stated above, the only evidence that additional receipts ever existed was through the testimony of Lloyd. “The determination of credibility of the witnesses is a question for the chancellor as trier of fact....” In re Estate of Grubbs, 753 So.2d 1043, 1056(1155) (Miss.2000). As the chancellor determined Gib-bes to be the most credible witness and this determination is supported by the record, we will not overturn that decision.
¶ 12. Without having found that credible evidence was presented to establish *591 that Lloyd had indeed met all of the terms of the contract, it cannot be said that he was entitled to a deed to the real property. Therefore, if Lloyd has no interest in the subject real property, § 15-1-7 is improper, as this statute of limitations governs actions to recover land.
¶ 13. The Mississippi Supreme Court has previously stated “[sjince there is no specific statute of limitations for claims on written contracts, § 15-1-49 therefore applies.” USF & G Co. v. Conservatorship of Melson, 809 So.2d 647, 652(1119) (Miss.2002). As the determination has been made that Lloyd’s cause of action accrued under contract, not as an action to recover land, § 15-1-49 and the three year statute of limitations prescribed therein applies. As was correctly found by the chancery court, Lloyd’s claim was time barred by the statute of limitations. Having found no reversible error, we affirm.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, AND ISHEE, JJ. CONCUR.