# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00590-COA

THE ESTATE OF JAMES R. POUNDS; JAMES BRADLEY POUNDS, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF JAMES R. POUNDS; SONYA POUNDS TUCKER; AND EULA MAE POUNDS

APPELLANTS

v.

J.L. SHIRLEY AND LINDA SHIRLEY

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 04/06/2016 |
| TRIAL JUDGE: | HON. C. MICHAEL MALSKI |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | GREG E. BEARD |
| ATTORNEYS FOR APPELLEES: | CASEY LANGSTON LOTT |
| | JOE-COLBY RAY LANGSTON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 10/10/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     The executor of the estate of James R. Pounds (Pounds Estate), and heirs individually, appeal the ruling of the Prentiss County Chancery Court. The chancellor reformed the warranty deed of the subject property, finding that the deed mistakenly included property not mutually agreed upon by the decedent and the owner. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Jim "J.L." Shirley (Shirley) was deeded land east of the Brown's Creek Channel by his uncle, H.C. Shirley, in 1970. The deed conveyed "all that part of [eight tracts] lying and

being east of Brown's Creek Channel." In 1988, Shirley was conveyed the land west of Brown's Creek by his uncle's widow, Eloise Cavaness Shirley. Shirley leased his land to James[1] for farming purposes for a number of years. In 1997, Shirley, suffering from cancer, decided to sell the tract of his land east of Brown's Creek to James.

¶3. Shirley and James undertook discussions about the sale and purchase of the land east of Brown's Creek, but they never discussed the exact acreage. The 1997 conveyance from Shirley to James was for the purchase price of $105,000 and was owner financed by Shirley, who held a deed of trust that was never recorded. There were two deeds relating to the 1997 conveyance of land. The first deed was signed on January 13, 1997. That deed read in part: "In consideration of the sum of ten dollars and other valuable consideration . . . , I [] hereby convey to [] J.L. Shirley [] the following described land in Prentiss County, Mississippi, to-wit: All that part of the following described land lying and being East of Brown's Creek Channel . . . ."

¶4. The second deed, a purportedly corrected deed, was signed the following day, on January 14, 1997. Both Shirley and his wife, Linda, signed the second deed, though Linda's signature was not necessary because the deed was titled in James's name only.

¶5. The 1997 deeds were prepared by a local attorney, Ellis Finch. There were only three people (Shirley, James, and Finch) present when the property was transferred. The 1997 deeds contained the exact language set forth in the second two paragraphs of the 1970 deed. However, Finch moved the language specifying that the only part of the land being conveyed

---

[1] Due to the number of parties with the same last name, we will refer to the decedent, James Pounds, as James.

was "all that part of [eight tracts] lying and being east of Brown's Creek" from the first paragraph to the second paragraph of the deed. Though the 1997 deed contained nearly the exact same language as that of the 1970 deed, the following alterations created the case in controversy:

> For and in consideration of the sum of [t]en [d]ollars ($10.00) and other good and valuable considerations, the receipt and sufficiency of all of which is hereby acknowledged, I, J.L. Shirley, do hereby convey and warrant to James R. Pounds, the land situated in Prentiss County, Mississippi, and being more particularly described as follows: All that part of the following described land lying and being [e]ast of Brown's Creek Channel . . . .

¶6.     James became ill and passed away in July 2014. James Bradley Pounds (Bradley), James's son, undertook the farming operations on his father's land. Bradley had his father's land surveyed following his death. As a result of the description of the property in the corrected deed, the surveyor included land west of Brown's Creek in his survey. The Shirleys were not aware of any claim to the land west of Brown's Creek. On December 29, 2014, James's surviving heirs conveyed the entirety of the surveyed property, including the disputed tract, to Bradley. Bradley recorded the deed on December 30, 2014.

¶7.     After discovering that James's heirs asserted a claim against certain portions of land west of Brown's Creek, the Shirleys filed a complaint against the Pounds Estate. In their complaint, the Shirleys argued that the warranty deed should be voided for fraud or civil conspiracy, or reformed due to a mutual mistake, or, in the alternative, the title to the property should be confirmed based on adverse possession. At trial, Shirley testified that the sale of the land west of Brown's Creek was never contemplated. Linda, who is Finch's cousin, testified that Shirley never discussed selling the property west of Brown's Creek.

3

Linda testified that the west side of the property held sentimental value to her and Shirley, and it was part of their livelihood.

¶8. Shirley's son-in-law, Harold Smith, testified that Shirley would bushhog the same land that the Pounds Estate claimed ownership of, but he never witnessed James bushhog or maintain the property. Eula Mae Pounds, James's wife, testified that she knew that he had purchased land west of Brown's Creek. However, Shirley's counsel impeached her trial testimony with her deposition statements that she had never heard her husband state at any time that he purchased land west of Brown's Creek. At trial, Bradley testified that his father never told him that he intended to buy property west of Brown's Creek. But Bradley contended that his father knew that he owned land on the west side of Brown's Creek but was unaware of the exact acreage. Bradley testified that his father never told him that Shirley intended to sell land west of Brown's Creek. Bradley acknowledged that if certain tracts of land west of Brown's Creek were sold to his father, two of the tracts would essentially be landlocked.

¶9. At trial, the judge asked Bradley why his father would purchase tract five, a landlocked tract, surrounded by Shirley's land. Bradley admitted that a mistake had been made in the deed; nevertheless, Bradley asserted that the tract was to accompany property on the east side of the land, though the tract was located on the west side. Bradley also argued that the deed had an easement across Shirley's land. Nevertheless, Bradley conceded that the property had no possible use, and he did not know why his father would have purchased the landlocked tract.

4

¶10.    Randy Paul Pounds (Randy), James's brother, also testified at trial.  Randy farmed land with James.  Randy testified that after farming Shirley's land for a number of years, his brother decided to purchase some of the land.  He testified that before the purchase was made, there was no discussion about the purchase of land west of Brown's Creek.  However, Randy explained that his brother was aware that he would be purchasing around 200 acres on the east side and 120 acres on the west side of Brown's Creek.  Randy acknowledged that he never heard Shirley state that he sold James land west of Brown's Creek.  Randy also testified that Shirley installed a gate on an adjoining neighbor's land that separated the land west of Brown's Creek.  Since James farmed a portion of the land west of Brown's Creek, Shirley provided him with a key to access the land.  Randy testified that though Shirley gated some of the land, he did so out of necessity to prevent trespassers from entering the property.

¶11.    Randy also testified that he saw Shirley bushhog and "spray" ditches with weed killer to prevent vegetation on the land that he considered James's land; but he had not seen Shirley bushhogging for five or more years.  Randy also bushhogged the land in question, installed a culvert to cross creeks, and assisted with fixing "blow-outs" that occurred as a result of flooding.  However, Randy testified that they bushhogged and installed ditches regardless of whether James leased or owned the land.  When asked to identify the land conveyed to James, Randy could not identify a tract of land that he farmed with James.

¶12.    After trial, the court issued its memorandum opinion and final judgment, finding that the warranty deed mistakenly included property west of Brown's Creek. The court found that the Shirleys did not prove fraud by clear and convincing evidence.  The court ordered the

5

Shirleys to repay the Pounds Estate for the taxes James paid for the property. Finding a mutual mistake had occurred, the court reformed the warranty deed. It is from that order that this appeal is taken. On appeal, the Pounds Estate argues:

> I. **THE CHANCELLOR ABUSED HIS DISCRETION IN FINDING A MUTUAL MISTAKE.**
>
> II. **THE SHIRLEYS' CLAIMS WERE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.**

## STANDARD OF REVIEW

¶13. "We will not disturb the chancellor's opinion when it is supported by substantial evidence unless the chancellor abused [his] discretion, or was manifestly wrong or clearly erroneous." *Kelly v. Barry*, 115 So. 3d 131, 133-34 (¶10) (Miss. Ct. App. 2013) (quoting *Olive v. McNeal*, 47 So. 3d 735, 739 (¶10) (Miss. Ct. App. 2010)). "Additionally, we will reverse the chancellor's decision if [he] applied an erroneous legal standard." *Id.* "We review questions of law de novo." *Id.* A deed may be reformed where it is shown to have resulted from the mutual mistake of the parties in contracting for it." *Id.* at 134 (¶12).

## DISCUSSION

> I. **Whether the chancellor's memorandum opinion and judgment finding mutual mistake was manifestly wrong and clearly erroneous.**

¶14. The Pounds Estate argues that the court abused its discretion in relying on assumptions and circumstantial evidence to reform the deed, rather than using the best evidence, the warranty deed. In support of its contentions, the Pounds Estate argues that the chancellor's opinion contained several errors and findings of fact that require further

6

explanation. The chancellor found that the facts surrounding the conveyance denoted a mutual mistake. The chancellor reiterated Shirley's testimony, that when he signed the warranty deed, he intended to only convey the land east of Brown's Creek to James. Before the execution of the warranty deed to James, Shirley leased land to James. Both James and Shirley executed an agricultural-land rent agreement that required James to make two payments of $15,000. The initial agreement did not specify which land was leased or what acreage the lease concerned. The chancellor noted that the agreement continued after the warranty deed was executed.

¶15. The Pounds Estate cites to many individual findings in the chancellor's decision in support of the contention that the chancellor abused his discretion. The Pounds Estate argues: (1) the installation of a gate on neighboring land was not evidence of mutual mistake; (2) it was error to find that James did not maintain the land west of Brown's Creek; (3) the court did not acknowledge the actions that James took to maintain the land; (4) the court's characterization of the purchased tracts of land west of Brown's Creek as "bizarre" is of no consequence; (5) the court erred in characterizing the land west of Brown's Creek as more valuable than the land on the east; and (6) the evidence relied upon by the court was indirect or circumstantial evidence, and the court abused its discretion in ignoring the best evidence of the parties' intent, the warranty deed.

¶16. The Shirleys argue that their case is supported by much more than just their own testimony. They argue that the evidence taken as a whole supports the chancellor's finding of a mutual mistake. "It is well established that this Court will not reverse a chancellor's

7

findings unless they are clearly erroneous." *Norris v. Cox*, 860 So. 2d 319, 322 (¶10) (Miss. Ct. App. 2003) (citing *Sproles v. Sproles*, 782 So. 2d 742, 746 (¶12) (Miss. 2001)). The Mississippi Supreme Court has illustrated this standard by saying, "a finding of fact is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted).

¶17. "In an action to reform a deed based on a mistake theory, the petitioner must demonstrate a mutual mistake among the parties or a unilateral mistake in combination with fraud or inequitable conduct on the part of the benefitting party." *Elchos v. Haas*, 178 So. 3d 1183, 1191-92 (¶25) (Miss. 2015). "The burden rests with the petitioner to prove the mutual mistake occurred between the parties beyond a reasonable doubt." *Id.*

¶18. The chancellor was presented with substantial evidence that the property west of Brown's Creek was never intended to be included in the 1997 warranty deed. A majority of the witnesses testified that James never informed them of his intent to purchase land west of Brown's Creek. Randy could not identify one of the tracts of land that he alleged belonged to his brother, though he farmed with him. Bradley testified that the inclusion of a landlocked tract of land was a mistake in the deed and that he did not know why his father would have purchased a landlocked tract that was essentially useless. As a result, the chancellor found that the totality of the evidence supported a finding of a mutual mistake in the warranty deed, warranting reformation. "Where there is substantial evidence to support [the chancellor's] findings, this Court is without the authority to disturb [his] conclusions,

8

although it might have found otherwise as an original matter." *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010). Accordingly, we find that the chancellor did not abuse his discretion in reforming the warranty deed.

## II. Whether the Shirleys' claims were barred by the statute of limitations.

¶19. The Pounds Estate argues that the Shirleys' claim of concealed fraud is time-barred because they were put on notice of the fraud or mistake once the deed was recorded. At trial, the court found no clear and convincing proof that James conspired to unlawfully or fraudulently act. As a result, the court found that the claim for fraud and civil conspiracy failed. Our supreme court has held that "where a plaintiff alleging a possessory interest in the land brings an action to clear title or to recover land obtained by fraudulent conveyance, that action is governed by the ten-year statute of limitations." *Lott v. Saulters*, 133 So. 3d 794, 799 (¶7) (Miss. 2014).

¶20. In their complaint, the Shirleys alleged that the transcription error was a result of intentional trickery and fraud. The Shirleys also argued that the deed of trust that Bradley recorded on December 30, 2014, was an attempt to fraudulently impair and cloud the title to the property. The Pounds Estate argues that the Shirleys' cause of action is time-barred, since they were put on notice of mistake when the deed was recorded. The Pounds Estate further asserts that if the ten-year statute of limitations does apply pursuant to Mississippi Code Annotated section 15-1-7 (Rev. 2012), then the Shirleys claims are still time-barred, since they brought the action eighteen years after the deed was recorded. We do not agree. "Actions to recover land are subject to the ten-year statute of limitations found in [section]

9

15-1-7 and [Mississippi Code Annotated section] 15-1-9 [(Rev. 2012)]. *Lott*, 133 So. 3d at 799 (¶8).

¶21.    In relevant part, section 15-1-17 provides:

> A person may not make an entry or commence an action to recover land *except within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued* to some person through whom he claims, or, if the right shall not have accrued to any person through whom he claims, then except within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same.

(Emphasis added).  Section 15-1-9 states that a claimant in a land dispute may not bring suit to recover the land except in accordance with section 15-1-7.  However, in every case of concealed fraud, the right to bring suit accrues when the fraud is first known or, with reasonable diligence, discovered.  Miss. Code Ann. § 15-1-9.

¶22.    The Shirleys commenced an action to recover land based on their assertion that the land was either fraudulently or mistakenly conveyed to James.  Their cause of action did not accrue until they became aware of the adverse claim to the land west of Brown's Creek.  No action was ever taken by James while he was alive to possess and control any tract of land west of Brown's Creek.  Therefore, the cause of action did not accrue until the Pounds Estate sought to enforce the 1997 warranty deed.  "[S]tatutes of limitation do not begin to run against one in actual or constructive possession of lands until an adverse entry has been made." *Lloyd v. Gibbes*, 910 So. 2d 587, 589 (¶9) (Miss. Ct. App. 2005) (quoting *Leech v. Masonite Corp.*, 68 So. 2d 297, 300 (Miss. 1953)).

¶23.    Accordingly, we find that the statute of limitations did not prohibit the chancellor

from hearing and ruling on the Shirleys' case. Accordingly, the chancellor's judgment is affirmed.

¶24. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**