BRIDGES, J.,
for the Court:
¶ 1. On August 28, 1996, Michael Stephen Brooks, Jr. was arrested on a charge of grand larceny in Tate County, Mississippi. Bail was set in the amount of $3,500 and was posted by the U.S. Bail Enforcement Agency (USBEA) through a contract signed by the company’s agent, Flossie *931 Garrett. This appeal arises from an order entered on June 18, 1999, by Honorable George C. Carlson, Jr. of the Circuit Court of Tate County. That order stated that John W. Hardy, the principal agent of USBEA, was liable for Brooks’s bail bond in the amount of $3,500 when Brooks failed to appear before the Tate County Circuit Court on his indictment for the grand larceny charge.
¶ 2. Hardy asserts that the lower court erred in its judgment finding him liable for this bond because USBEA was only under contract to produce Brooks to the justice court for Brooks’s preliminary hearing on October 30, 1996. Hardy claims that US-BEA is not responsible for the actions of Brooks beyond the preliminary hearing, for which Brooks did appear, because the contract for Brooks’s bond expired after Brooks was released following that hearing. Hardy asks this Court to reverse Judge Carlson’s decision and vacate the judgment nisi and scire facias issued against Hardy for the $3,500 bond.
FACTS
¶3. Hardy, doing business as USBEA, entered into a contract as surety for Brooks on October 23, 1996, to secure Brooks’s presence for his court appearance on the grand larceny charge. Under this contract, USBEA agreed to pay $3,500 to the justice court in Senatobia, Mississippi, if Brooks failed to appear before that court for a preliminary hearing on October 30, 1996. The bond was signed by Garrett on Hardy’s behalf for USBEA.
¶ 4. Brooks did appear at the preliminary hearing and the justice court found that enough evidence existed against Brooks to bind his case over for consideration by the grand jury. At this time, the court noticed that the original bond signed by Garrett had been made returnable to justice court only. The court called in Garrett during the course of the preliminary hearing to obtain her approval to extend this bond to the Circuit Court of Tate County. Brooks was present when Garrett, acting as an agent of USBEA and Hardy, modified the bond to reflect that it was returnable to both justice court and circuit court. Garrett signaled her approval on behalf of USBEA and Hardy by manually writing “/Circuit” after the words, “Michael Brooks, Jr. has been charged with the offense of Grand Larceny and is hereby ordered to appear in Justice .... ”
¶ 5. Brooks was indicted for the grand larceny charge on February 27, 1997, after which time he never again made a court appearance. The court issued a bench warrant and entered a judgment nisi and a scire facias against Brooks and Hardy, forfeiting the bond and commanding them to appear before the court on June 20, 1997. Apparently, nothing more was done until September 1, 1998, when the court issued a second bench warrant for Brooks’s arrest and entered another judgment nisi against Brooks and Hardy. Hardy sent a letter to the circuit court clerk declaring that he was not liable for the bail bond of $3,500 and that there were, in fact, no records of such bond in the offices of USBEA. However, on December 10, 1998, the court entered final judgment against Brooks and Hardy. Hardy was ordered to pay the $3,500 bond.
¶ 6. Hardy never produced Brooks nor did he pay the $3,500 bond. The court granted a hearing to assess Hardy’s liability on the bond on June 18, 1999. Eddie Hadskey, a witness for the State who was the investigating officer on Brooks’s case and now serves as the current circuit court clerk, appeared at the hearing to relate the events of this matter, including Garrett’s modification of the bond to reflect that it was returnable to “Justice/Circuit Court.” *932 Hardy’s reply to this testimony was that after the preliminary hearing proceedings, USBEA’s obligation to Brooks and the court had been fulfilled and the bond became a “previously posted” bond. He further claims that the justice court should not have allowed Garrett to simply write in “/Circuit,” binding USBEA to a contract for Brooks’s future court appearances before the circuit court. Hardy asserts that it was not his intention to contract with Brooks for any further court appearances beyond the preliminary hearing before the justice court on October 80,1996.
¶ 7. The lower court found that Hardy was, in fact, liable on the bond, taking into consideration the testimony given by Hadskey that he witnessed Garrett’s actions in making the bond returnable to circuit court as an agent of USBEA and Hardy.
LEGAL ANALYSIS
¶ 8. The issue before this Court is whether the lower court was in error when it found that Hardy was liable on the $3,500 bond because Brooks failed to appear before the circuit court following his indictment for the crime of grand larceny. It is our opinion that the lower court’s decision was proper and that Hardy should be responsible for the $3,500 bail bond. Hardy cites the case of Accredited Surety and Casualty Co., Inc. v. State of Florida, 383 So.2d 308 (Fla.Dist.Ct.App.1980), which he purports to be supportive of his position in this matter. However, we find that it is not. The language of that case is as follows: “[a] bail bond is a three party contract between the state, the accused and the surety. The surety guarantees the state that the accused will appear at subsequent proceedings.” Id. at 308. (emphasis added). Hardy argues that he and US-BEA are not liable for Brooks’s failure to appear at any court proceedings after the preliminary hearing because a separate bond was not issued for Brooks’s appearance before the circuit court and no second contract was formed between USBEA and Brooks. However, this Florida case upon which he relies so heavily does not support his theory. Id. The wording of that case explicitly provides that a surety would be responsible for subsequent proceedings, plural, not just one proceeding. Id. In fact, the case further provides that a surety is discharged from liability either when the accused is rearrested on the same charge or by conviction on the original charge. Id. at 309. Neither of these scenarios ever occurred in the instant case.
¶ 9. Brooks appeared at the preliminary hearing and the court released him until further notice. There is no evidence that he was ever imprisoned after this point. His indictment for the crime of grand larceny, the same charge for which he was required to appear for the preliminary hearing, did not constitute a rearrest of Brooks because he was not taken into the State’s custody following such indictment. “Indictment” is defined as “an accusation in writing ... charging that a person has done some act, or been guilty of some omission, which by law is a public offense....” Blacr’s Law DictioNary 772 (6th ed.1990). “An indictment is only an accusation; it is the physical means by which a defendant is brought to trial. Id. Conversely, an “arrest” is defined as “de-priv[ing] a person of his liberty by legal authority.” BlaCK’s Law DICTIONARY 109-10 (6th ed.1990). An arrest involves detaining or taking a person into custody and subjecting the person to “the actual control and will of the officer.” Id. Moreover, a “rearrest” is the “right of [an] officer to take without warrant one who has escaped after arrest, or violated parole, or failed to respond to bond for appearance.” Black’s Law DictionaRY 110 (6th ed.1990). Clear *933 ly, a rearrest does not present itself in this matter. Furthermore, Brooks’s case never made it to the trial level because of Brooks’s eventual disappearance and therefore, he was never convicted or acquitted of grand larceny thereby discharging USBEA and Hardy.
¶ 10. In Frontier Insurance Co. v. State, 741 So.2d 1021 (¶ 20) (Miss.Ct.App. 1999), this Court addressed the issue of the liability of sureties in bond contracts such as the one here. The language used by this Court in that case was taken directly from Miss.Code Ann. § 99-5-1 (Rev.1994). Id. This statute conclusively provides that the surety on a bail bond is liable for the accused’s failure to appear in court “from day to day and term to term until discharged by law....” Miss.Code Ann. § 99-5-1 (Rev.1994); Frontier Insurance, 741 So.2d at (¶ 20). The remaining portion of that excerpt supplies further information that “[w]hen the bail is for appearance before any committing court or a judge, the form may be varied to suit the condition.” Miss.Code Ann. § 99-5-1. We find that this is the situation we have before us. A “committing court” is defined as one that is “invested with the authority to conduct the preliminary hearing of persons charged with crime, and either to discharge them for lack of sufficient prima facie evidence or to commit them to jail to await trial or ... to accept bad and release them thereon.” BlacK’s Law DictionaRY 274 (6th ed.1990). In this case, the justice court fits snugly into that role.
¶ 11. We find that when Garrett gave approval on behalf of Hardy and USBEA that the bond be made returnable not only to the justice court, but also to the circuit court by writing in “/Circuit” on the bond, she was doing nothing more than adapting the form of the bond to reflect that US-BEA would be responsible for any of Brooks’s future court appearances in circuit court. This, in our opinion, is in line with the proclamation of the statute that a bond may be varied under the necessary conditions approved by the committing court and the surety. Miss.Code Ann. § 99-5-1. Hardy has presented no evidence to this Court that any events occurred which would serve to discharge US-BEA from liability for Brooks’s failure to appear before the circuit court, such as Brooks’s rearrest or conviction on the grand larceny charge. When Garrett, the specified agent for USBEA and Hardy, adjusted this bond agreement, she did so in open court and the event was witnessed by all those present at the preliminary hearing, including Brooks himself.
¶ 12. Brooks was released from the custody of the State into the custody of USBEA upon the execution of the bail bond contract between Brooks, USBEA and the State. Resolute Insurance Co. v. State, 233 So.2d 788, 790 (Miss.1970); Warren v. State, 179 So.2d 181, 183 (Miss. 1965) (the accused is regarded as being removed from the custody of the state and delivered into the custody of the surety, which serves as a continuance of his original imprisonment). Hardy has shown no proof that Brooks was ever released from the custody of USBEA and returned to the custody of the State following the preliminary hearing. As such, Brooks would have still been in the custody of USBEA. Id. “Bail is a delivery of a person to his sureties, upon their giving, together with himself, sufficient security for his appearance; he being supposed to continue in their friendly custody instead of going to jail.” Resolute, 233 So.2d at 790 (emphasis added). Furthermore, as was done here through Garrett, a surety “may exercise their rights in person or by agent.” Warren, 179 So.2d at 183. “Agent” is defined as follows:
*934 A person authorized by another (principal) to act for or in place of him; one entrusted with another’s business.... A business representative, whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between principal and third persons.... One who deals not only with things, as does a servant, but with persons, using his own discretion as to means, and frequently establishing contractual relations between his principal and third persons. One authorized to transact all business of principal....
Blacic’s Law DictionaRY 63 (6th ed.1990). See Restatement (Second) of Agency § 1 (1958); 2A C.J.S. Agency § 4-5 (1972). “Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.” Restatement (Seoond) of Agency § 1 (1958). It is not contested, that Garrett was, in fact, Hardy’s agent, authorized to act and do business on behalf of Hardy and USBEA. As such, we find that Hardy is bound by Garrett’s actions in approving the bond to be returnable to circuit court.
¶ 13. According to Mississippi statute, absent circumstances which would discharge a surety earlier such as rearrest or conviction, a bond does not expire, thereby releasing a surety from liability, until a period of three years from the origination of the bond has passed. Miss. Code Ann. § 99-5-5 (Rev.2000). As previously noted, we can find no proof of the rearrest or conviction of Brooks in this case. Hardy claims in his testimony at his liability hearing that Brooks was returned to the custody of the State on November 1, 1996, merely one day after the preliminary hearing. The lower court disagreed, as do we.
¶ 14. Hardy has simply provided this Court with no evidence to support his contention that Brooks was effectually returned to the State’s custody or that US-BEA surrendered custody of Brooks in any other fashion at the conclusion of that hearing. Furthermore, there is nothing in the record from which we can even infer this allegation by Hardy. In fact, during Hardy’s testimony at his liability hearing, despite the judge’s requests, he never clarified for the court how he came to the conclusion that Brooks was returned to the custody of the State subsequent to the preliminary hearing. Rather, the transcript reveals that he ventured into a discussion with the judge about the previously mentioned Florida case of Accredited Surety, in an attempt to substantiate his position. Accredited Surety, 383 So.2d at 308. However, the judge was convinced that Accredited Surety did nothing to effectively advance Hardy’s claims. We agree. The judge then went on to explain to Hardy the reasons for the bond procedures used in Tate County. In what we can only interpret as an awkward last-ditch attempt to convince the judge that he was not responsible for the bond, Hardy then endeavored to deny candid and, in our opinion, credible evidence that his agent, Garrett, ever appeared at Brooks’s preliminary hearing and modified the bond in justice court that day. Hardy stated that he had “no evidence that she did that.” The record is replete with evidence otherwise, including the testimony of Hadskey, who was present at Brooks’s preliminary hearing where he witnessed Garrett’s modification of the bond. Hardy would have this Court believe that Hadskey, a former officer of the law and current officer of the court, lied about witnessing that event. However, Hardy admittedly produces no proof to that effect.
*935 ¶ 15. Hardy also boldly argues that the Tate County court system is corrupt and continues to carry on illegal practices in the area of bail bonds. He asserts that these courts are wrongfully attempting to make the bond process more smooth for the defendants accused of crimes. Hardy insinuates that these accused persons are not entitled to such consideration because they are “criminals.” It is our perception, which is quite troubling, that Hardy seems to have forgotten that accused persons are innocent until proven guilty and they have rights that are as important as any other citizen. Hardy further seems to chastise the Tate County courts’ agenda to help these defendants save money on bond for each court appearance in order that they will have funds for the attorney of their choice by the time that their case reaches trial. In fact, in Resolute, 233 So.2d at 790, the Mississippi Supreme Court obviously disagrees with Hardy’s cold sentiments. While the court recognizes that the primary goal of justice is to punish guilty criminals, it also pronounces that “bond is allowed to be given for the convenience of a person not yet proved to be guilty, and to protect the state against the expense of keeping such person in jail.” Id. (emphasis added).
¶ 16. Even if we were to opine that the Tate County court system was so dishonorable as to harbor a practice of illegal bail bond procedures as Hardy would have us believe, he would still fail in his attack of such activity according to Miss.Code Ann. § 99-5-23, which provides:
All bonds, recognizances, or acknowledgments of indebtedness, conditioned for the appearance of any party before any court or officer, in any state case or criminal proceeding, which shall have the effect to free such party from jail or legal custody of any sort, shall be valid and bind the party and sureties, according to the condition of such bond, recognizance, or acknowledgment, whether it was taken by the proper officer or under circumstances authorized by law or not, or whether the officer’s return identify it or not.
Miss.Code Ann. § 99-5-23 (Rev.2000) (emphasis added). Hardy’s agent was present at the preliminary hearing and she took actions on behalf of USBEA and Hardy that have served to bind Hardy for payment of this $3,500 bail bond. Clearly, according to this section of the bond statute, even if Garrett’s actions and those actions of the court in allowing her modification of the bond were unlawful or dishonest ones, which Hardy suggests, the bond still stands and the conditions of that bond as written still apply. Id.
¶ 17.' We find that there is sufficient proof that Garrett did act on behalf of USBEA and Hardy when she approved the bond’s return to circuit court and modified it to reflect such approval. We further opine that this action by Garrett effectively served to bind Hardy to liability for Brooks’s failure to appear before the circuit court on the required date. For the foregoing reasons, we find that the lower court’s judgment holding Hardy ha-ble for the $3,500 bond should be affirmed.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF TATE COUNTY HOLDING APPELLANT LIABLE FOR BAIL BOND IN THE AMOUNT OF $3,500, PLUS STATUTORY PENALTIES AND INTEREST, IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ., concur.