# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00673-COA

**IKEHEEM R. COLENBERG A/K/A IKEHEEM**                    **APPELLANT**
**RALPHEAL COLENBERG A/K/A IKEHEEM**
**COLENBERG**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

DATE OF JUDGMENT:                    02/23/2021
TRIAL JUDGE:                         HON. TOMIKA HARRIS IRVING
COURT FROM WHICH APPEALED:           JEFFERSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:             NOAH M. DRAKE
                                     OTTOWA E. CARTER JR.
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: ALLISON ELIZABETH HORNE
NATURE OF THE CASE:                  CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                         AFFIRMED - 12/13/2022
MOTION FOR REHEARING FILED:

**EN BANC.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.    Ikeheem Colenberg appeals the circuit court's denial of his motion for post-conviction collateral relief (PCR). The circuit court ruled that Colenberg did not establish by a preponderance of the evidence that there was not a sufficient factual basis for his guilty plea or that his guilty plea was involuntary. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    On February 12, 2019, Colenberg was indicted on four counts: (1) first-degree murder of Latasha Collins; (2) attempted murder of Rasheen Carter; (3) shooting into an automobile; and (4) drive-by shooting.

¶3.     Colenberg was arraigned in March 2019 and initially pled not guilty. On September 18, 2019, Colenberg changed his plea and pled guilty to second-degree murder and drive-by shooting. The circuit court held a hearing to ensure that Colenberg pled guilty knowingly, intelligently, and voluntarily. The circuit judge asked Colenberg a series of questions to which Colenberg answered in the affirmative, including if he had read and understood his plea petition and if his attorney had explained everything to him. The circuit judge also asked about his attorney's representation. Colenberg confirmed that he had been properly advised and that his attorney had not promised him anything or threatened him. Then, the circuit judge asked the State what facts it would use to prove the charges against Colenberg. For the charge of second-degree murder, the State merely recited the elements of second-degree murder. For the charge of drive-by shooting, the State again recited the elements of the crime and stated that it would prove that Colenberg was in a vehicle when he engaged in the shooting. Colenberg also stated he understood that because he pled guilty, "the State [was] not required to prove anything."

¶4.     Afterward, Colenberg admitted that he had committed the offenses pled. The State recommended that Colenberg be sentenced to thirty years in custody for second-degree murder, with twenty years to serve and ten years suspended and on post-release supervision, and thirty years in custody for drive-by shooting, with twenty years to serve and ten years on post-release supervision, with both sentences set to run concurrently. Colenberg asserted that he understood the sentencing recommendation. The circuit judge repeatedly asked Colenberg if he had committed the charged crimes and understood that he was pleading guilty, and each

2

time, Colenberg stated that he understood and was guilty. Finding that the guilty plea was entered knowingly, intelligently, and voluntarily, the circuit court sentenced Colenberg as the State had recommended. The same day, Colenberg signed, initialed, and entered his guilty plea.

¶5. On December 11, 2020, Colenberg filed his PCR motion alleging that he received ineffective assistance of counsel, that his plea was involuntary based on this ineffective assistance, and that there was no factual basis to support his plea. Colenberg attached to his PCR motion affidavits from himself, his father, and his sister, all attesting that Attorney Edward Blackmon misinformed him about his eligibility to receive earned time and trusty time.

¶6. On February 8, 2021, the circuit court held an evidentiary hearing on the PCR motion. At the hearing, Colenberg's father and sister testified, but Colenberg did not. Like their affidavits, Colenberg's family testified that Colenberg had received incorrect advice. In contrast, Blackmon testified that as a matter of "good practice" he does not talk to clients about eligibility for earned time or trusty time because the Mississippi Legislature may change those laws at any given time. Blackmon's co-counsel, Bradford Blackmon (Bradford), also denied giving Colenberg erroneous advice on the same matter. After review, the circuit court denied Colenberg's PCR motion. Colenberg moved for reconsideration, but the circuit court denied his motion, as well. Colenberg appeals.

**DISCUSSION**

¶7. Colenberg argues on appeal that the circuit court's denial of his PCR motion was

3

clearly erroneous because (1) the State provided no factual basis to support his guilty plea, and (2) Blackmon misinformed him regarding his eligibility to receive earned time and trusty time, constituting ineffective assistance of counsel and making his plea involuntary.

¶8.    "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's decision if it is clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Magee v. State*, 340 So. 3d 297, 300 (¶11) (Miss. 2022). "The burden of proof . . . is on the petitioner to show 'by a preponderance of the evidence' that he is entitled to relief." *Doss v. State*, 19 So. 3d 690, 694 (¶5) (Miss. 2009) (quoting Miss. Code Ann. § 99-39-23(7) (Rev. 2007)); *accord* Miss. Code Ann. § 99-39-23 (Rev. 2015).

## I.    Factual Basis for Plea

¶9.    "Before the trial court may accept a plea of guilty, the court must determine . . . that there is a factual basis for the plea." MRCrP 15.3(c). This means that before a trial court may accept a plea, it must "have before it . . . substantial evidence that the accused did commit the legally defined offense to which he is offering the plea. What facts must be shown are a function of the definition of the crime and its assorted elements." *Corley v. State*, 585 So. 2d 765, 767 (Miss. 1991). However, the requisite factual showing need "not flesh out the details which might be brought forth at trial. Rules of evidence may be relaxed at plea hearings. Fair inference favorable to guilt may facilitate the finding." *Id.* "In the end there must be enough that the court may say with confidence the prosecution could prove the accused guilty of the crime charged, that the defendant's conduct was within the ambit of that

4

defined as criminal." *Id.* (internal quotation marks omitted).

¶10.    "Just as there is more than one way to skin the proverbial cat, there are numerous ways to establish a factual basis for a guilty plea." *Williams v. State*, 110 So. 3d 840, 843 (¶17) (Miss. Ct. App. 2013). "A factual basis for a plea may be established by the admission of the defendant, but the admission must contain factual statements constituting a crime or be accompanied by independent evidence of guilt. . . . [A] factual basis is not established by the mere fact that a defendant enters a plea of guilty." *Hannah v. State*, 943 So. 2d 20, 26-27 (¶16) (Miss. 2006) (citation omitted). A factual basis may also be established "by a statement of the prosecutor, the testimony of live witnesses, and prior proceedings." *Williams*, 110 So. 3d at 843 (¶17) (quoting *Turner v. State*, 864 So. 2d 288, 292 (¶17) (Miss. Ct. App. 2003)). "And if sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea." *Id.* (internal quotation marks omitted). However, this Court has held that "the indictment must be read into the record at the plea hearing" before it can be used to establish the factual basis for a plea. *Venezia v. State*, 203 So. 3d 1, 3 (¶7) (Miss. Ct. App. 2016); *accord Barton v. State*, 341 So. 3d 109, 114 (¶8) (Miss. Ct. App. 2020), *cert. denied*, 299 So. 3d 796 (Miss. 2020). "When determining whether a sufficient factual basis existed at the trial-court level, we review the entire record." *Crawford v. State*, 287 So. 3d 314, 317 (¶6) (Miss. Ct. App. 2019).

¶11.    In the present case, Counts 1 and 4 of the indictment alleged that on or about February 10, 2018, Colenberg

> did wilfully, unlawfully, feloniously, with deliberate design to effect the death
> of a human being other than the deceased Latasha Collins and without the

5

authority of law did kill and murder one Latasha Collins, a human being, by shooting her with a gun, contrary to and in violation of Section 97-3-19(1)(a) of the Mississippi Code . . . ;

. . . .

and . . . did wilfully, unlawfully, feloniously, purposely and knowingly attempt to cause serious bodily injury to others and caused such injury by discharging . . . a gun at the . . . vehicle occupied by Latasha Collins and Michael Washington at a time when . . . Colenberg was in [another] vehicle . . . contrary to and in violation of Section 97-3-109 of the Mississippi Code . . . .

As noted above, under Count 1, Colenberg subsequently pled guilty to the lesser-included offense of second-degree murder rather than the indicted offense of first-degree murder. The indictment was not read or even mentioned during Colenberg's plea hearing. Accordingly, the indictment cannot provide a factual basis for his plea. *Venezia*, 203 So. 3d at 3 (¶7); *Barton*, 341 So. 3d at 114 (¶8).[1]

¶12.    Seven months after he was indicted, Colenberg entered into a plea agreement and filed a petition to plead guilty. It is clear that there was some confusion in completing Colenberg's plea petition. On the first page of the petition, one of Colenberg's attorneys, Bradford, wrote that Colenberg was pleading guilty to second-degree murder (Count 1) and "shooting into

---

[1] The State argues that we should reconsider our decisions in *Venezia* and *Barton* on this point, but we decline to do so. "An indictment is only an accusation . . . ." *State v. Brooks*, 781 So. 2d 929, 932 (¶9) (Miss. Ct. App. 2001) (quoting Black's Law Dictionary 772 (6th ed. 1990)). It "is not evidence of the facts charged in [it] and . . . should not be considered as evidence of guilt." *Rainer v. State*, 438 So. 2d 290, 293 (Miss. 1983). Therefore, unless the accused admits to facts charged in the indictment, the indictment's mere existence cannot establish that there is "substantial evidence that the accused did commit the legally defined offense to which he is offering the plea." *Corley*, 585 So. 2d at 767. Moreover, in the absence of a valid waiver, an indictment is a requirement in all felony cases. MRCrP 14.5. If the mere existence of an indictment was sufficient to supply the factual basis for a plea, the latter requirement would have little practical significance.

6

a motor vehicle" (Count 3). However, someone later struck through "shooting into a motor vehicle" and wrote in "Drive by" (Count 4),[2] and Colenberg initialed the change to the petition. During Colenberg's plea hearing, Colenberg and Blackmon confirmed that he was pleading guilty to Counts 1 and 4 of the indictment, not Count 3.

¶13. Although the error was corrected on the first page of the plea petition, related errors were not corrected in subsequent sections of the petition. On page 5, the petition addressed the elements and facts of the offenses to which Colenberg was pleading guilty as follows:

> My lawyer advises me that the elements of the charge to which I am pleading guilty are as follows:
>
> willfully, unlawfully, or feloniously attempting to cause serious bodily injury to others by discharging a firearm into an occupied vehicle/the killing of a human being during an eminently dangerous act w/o premeditation.
>
> I submit the following facts which I state to be true, and, feel all of the above elements are proven by these facts:
>
> On the date charged in the indictment, the Defendant did willfully, unlawfully, and feloniously discharge a firearm into an occupied vehicle. On the date charged in the indictment, the Defendant did willfully, unlawfully, and feloniously did cause the death of Latasha Collins.

Bradford handwrote the underlined text above, and Colenberg initialed the page and signed the petition under oath. In relevant part, the handwritten text tracks Count 3 of the indictment rather than Count 4.

¶14. During Colenberg's plea hearing, the circuit judge asked the prosecutor what the State would prove if the case went to trial, and the prosecutor responded as follows:

---

[2] At the evidentiary hearing on Colenberg's PCR motion, Bradford testified that the correction was not in his handwriting and that he did not know who made the change.

7

[I]f the State were to go to trial on a second degree murder charge, the State would have to prove that the defendant did kill a human being and would have to prove that he did so in the commission of an act eminently dangerous to others and evidencing a depraved heart regardless of human life although without any premeditated design to the effect of any particular individual and this would be on a second degree murder charge.

If we were to proceed to trial on the drive-by shooting charge, the [S]tate would have to prove that the defendant did, in fact, with an intent to cause bodily injury to another or causing bodily injury to another, discharge a firearm and that he discharged the firearm while he, himself, was driving in a certain vehicle, and in this case we would prove that he was, in fact, driving a vehicle when he committed this offense.

¶15. The State's answer to the judge's question was unhelpful and, standing alone, failed to provide a sufficient factual basis for the plea. For one thing, the State recited what elements it "would have to prove" if the case went to trial. This was merely a partial listing of the elements of the offenses, not a positive statement of anything that the State *would in fact* prove if the case went to trial. However, the circuit judge's follow-up questions to Colenberg were adequate to correct this particular error. The judge asked Colenberg whether he "hear[d] what the State *would prove* if [the case went] to trial on the charges [he was] pleading guilty to." (Emphasis added). After Colenberg answered in the affirmative, the judge then asked specifically, "[D]id you commit those offenses?" Colenberg again answered in the affirmative.

¶16. In addition, even while attempting to establish a factual basis by a bare recitation of the elements of the offenses, the State omitted or misstated some elements. An essential element of second-degree murder is that the defendant killed the victim "without the authority of law." *Clark v. State*, 315 So. 3d 987, 1000-01 (¶32) (Miss. 2021) (quoting

8

*Montgomery v. State*, 253 So. 3d 305, 316 (¶42) (Miss. 2018)); Miss. Code Ann. § 97-3-19(1)(b) (Supp. 2017). In addition, an essential element of drive-by shooting is attempting to cause or causing "*serious* bodily injury to another." Miss. Code Ann. § 97-3-109(1) (Rev. 2014) (emphasis added). The difference between mere bodily injury and *serious* bodily injury is material.[3] Nonetheless, at Colenberg's plea hearing, the prosecutor failed to state that the killing was done without authority of law or that Colenberg attempted to cause *serious* bodily injury. If the prosecutor had provided a more substantial description of the facts of the case and the evidence of guilt, the underlying factual basis for these elements might have been readily apparent, and a verbatim recitation of statutory language would not have been necessary. However, the prosecutor did not offer any specific facts regarding the offense. If the State attempts to establish a factual basis based on nothing more than the barest recitation of the elements of an offense, the State should at least make sure to recite *all* of those elements *correctly*.

¶17. Despite the shortcomings of the State's factual presentation, we conclude that the record as a whole was sufficient to establish a factual basis for Colenberg's plea. As noted above, "[w]hen determining whether a sufficient factual basis existed at the trial-court level, we review the entire record." *Crawford*, 287 So. 3d at 317 (¶6). This includes Colenberg's plea petition. Colenberg signed the petition under oath, and at his plea hearing he confirmed that his lawyer had gone over the entire petition with him and that he understood everything

---

[3] *Compare Fleming v. State*, 604 So. 2d 280, 292 (Miss. 1992) (defining "serious bodily injury"), *with Murrell v. State*, 655 So. 2d 881, 884 (Miss. 1995) (defining "bodily injury"), *criticized on other grounds by Dilworth v. State*, 909 So. 2d 731, 735 n.4 (Miss. 2005).

9

in it. Taken together, Colenberg's sworn plea petition and plea colloquy establish that he admitted he had killed Collins without authority of law[4] and by an act eminently dangerous to others, i.e., by shooting into an occupied vehicle. Those facts are a sufficient factual basis for the offense of second-degree murder. *See, e.g.*, *Cooper v. State*, 977 So. 2d 1220, 1224-25 (¶18) (Miss. Ct. App. 2007) (holding that evidence the defendant shot into an occupied vehicle was sufficient to establish depraved-heart murder, now classified as second-degree murder). In addition, Colenberg's plea colloquy establishes that he recklessly discharged his gun while in a vehicle and caused serious bodily injury. This is a sufficient factual basis for the offense of drive-by shooting. *See* Miss. Code Ann. § 97-3-109(1).

¶18. We note that "the best practice during a plea hearing is for the State to offer more factual detail than what was produced in this case." *Crawford*, 287 So. 3d at 319-20 (¶16). In addition, "[a] defendant waives his constitutional right to remain silent when he pleads guilty. It is not asking too much of a trial judge to require the defendant to inform the court of exactly what he, the defendant, did that constitutes the crime that the defendant is pleading guilty to . . . ." *Carreiro v. State*, 5 So. 3d 1170, 1175 (¶16) (Miss. Ct. App. 2009). Because that did not occur in this case, the record contains only a limited factual basis for Colenberg's plea. Nonetheless, we conclude that all the facts before the trial court were minimally sufficient to establish a factual basis for the plea.

## II. Involuntary Guilty Plea

---

[4] In his plea petition, Colenberg admitted that he killed Collins "unlawfully." "The word 'unlawfully' and the phrase 'without the authority of law' are interchangeable." *Turner v. State*, 796 So. 2d 998, 1003 (¶20) (Miss. 2001).

¶19. Colenberg's remaining claims are intertwined. He alleges that Blackmon incorrectly advised him that he would be eligible for trusty time and other forms of earned time, which could make him eligible for release in eight to twelve years. Colenberg further alleges that he pled guilty in reliance on this misinformation, which rendered his plea involuntary, and that Blackmon's errors amounted to ineffective assistance of counsel.

¶20. When a defendant in the current context pleads guilty but then later alleges that the plea was involuntary due to counsel's misinformation, the defendant must show to the court by a preponderance of the evidence that (1) "the defendant's attorney affirmatively misinformed him regarding his eligibility for earned time or trusty time[,] [(2)] the attorney's erroneous advice was not corrected[,] and [(3)] the defendant pled guilty in reliance on the erroneous advice." *Manuel v. State*, 304 So. 3d 713, 717 (¶11) (Miss. Ct. App. 2020) (citing *Sylvester v. State*, 113 So. 3d 618, 623-24 (¶¶19-20) (Miss. 2013)).

¶21. Months after sentencing, Colenberg alleged in his PCR motion that his plea was involuntary because Blackmon had misinformed him by telling him that "he would be able to get into classes, have a job, and receive *trusty earned time* or meritorious time and other forms of '*good-time*'"; however, "he was actually serving twenty (20) years day for day and he was *ineligible for '*good time*.*'" (Emphasis added). The circuit court then properly held an evidentiary hearing on the matter. Afterward, the circuit court concluded that any misinformation, if given, was "cured" by the plea petition and the plea transcript.

¶22. As we discussed in a recent case, when looking back at the plea colloquy, the relevant inquiry is whether the judge said "anything that could contradict or make [the defendant]

11

question the advice he had received from his attorney." *Ulmer v. State*, 292 So. 3d 611, 615 (¶13) (Miss. Ct. App. 2020). A correction is sufficient if statements were made that could cause the defendant to doubt his counsel's statements. *Id*.

¶23. In *Ulmer*, Lonnie Ulmer pled guilty to second-degree murder and was sentenced to forty years, with twenty of those years to serve and the rest suspended, in the custody of the Mississippi Department of Corrections (MDOC). *Id*. at 612 (¶1). He alleged in his PCR motion that his plea was involuntary. *Id*. Ulmer alleged that he was told by counsel that he would be "eligible for trusty-earned time." *Id*. at (¶3). But Ulmer later learned that a person convicted of second-degree murder is ineligible for trusty-earned time. *Id*. Remarkably, Ulmer's attorney, Rickman, corroborated his story. *Id*. at (¶4). Rickman affirmed that she told Ulmer he would be eligible for trusty-earned time and also that she believed he would not have pled guilty had he known he was going to serve twenty years day for day. *Id*. at 613 (¶4). The circuit court denied Ulmer's PCR motion. On appeal, we explained the circuit court's error:

> The plea petition did not mention trusty-earned time, parole, or early release. The plea petition did not mention day-for-day time or an MDOC policy or the fact that the court or the attorney cannot control the ultimate application of Mississippi law or MDOC policy. Thus, the plea petition did not contradict in any shape or form Ulmer's erroneous expectation about trusty-earned time, parole, or early release. The petition's statement that the judge could sentence a person to the maximum sentence did not alleviate Ulmer's erroneous assumption as a result of the wrong advice given by his attorney. Had the plea petition contained the standard language included in some written petitions, that neither the circuit court nor anyone else could guarantee or give advice as to early release or parole and that those decisions are a matter between the individual and the MDOC, maybe the plea petition would have, in fact, "belied" the testimony presented by Ulmer.

*Id*. at 615-16 (¶14).

¶24.   While in *Ulmer*, we found that the plea colloquy did not serve to contradict the counsel's advice, this case is factually distinguishable. *Id*. at 615 (¶14). Unlike *Ulmer*, the record, here, reflects that Colenberg's alleged misinformation about his earned time or trusty time was sufficiently contradicted by both his plea petition and his attorney's testimony. When Colenberg signed his guilty-plea petition, he attested to the following:

> 4.   I have told my lawyer all of the facts and circumstances known to me about the charge(s) asserted in the indictment(s). I believe that my lawyer is fully informed on all such matters. My lawyer has advised me of the nature of the charge(s) and the possible defenses that I may have to the charge(s).
>
> . . . .
>
> 8.   I declare that no officer or agent of any branch of government, or any other person has made any promise or inducement of any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence, probation, or early release, or any other form of lenience, if I plead "Guilty." I have not been beaten, threatened, mentally or physically forced, intimidated or coerced in any manner to plead guilty to the crime charged against me. I offer my plea of "Guilty" freely and voluntarily and of my own accord and with full understanding of all the matters set forth in the indictment(s) herein and in this Petition, and this plea is with the advice and consent of my lawyer.
>
> . . . .
>
> 11.   I do understand that no one can assure me of parole or early release.
>
> 12.   I understand that if I am not eligible for parole, I will not receive "good time credits." I also understand that "earned time" or "good time" will not be applied to reduce my parole eligibility date. I understand that this Court has no control over the giving of earned time or good time. I understand that this process is governed by the Mississippi Department of Corrections.

¶25.   Moreover, unlike the facts in *Ulmer* where the defendant's attorney corroborated his statements, here, there is no affirmative showing that Colenberg was misinformed.

13

Colenberg's attorney "vehemently denied stating any promise of earned time or early release to Mr. Colenberg." And, unlike the plea petition in *Ulmer*, Colenberg's plea petition, which he signed, initialed, and dated, informed Colenberg that he would not receive good time credits and that neither earned time nor good time would be applied to reduce his parole eligibility date. Colenberg's petition emphasized that the Court did not have control over the "giving of earned time or good time" and that it could only be determined by the MDOC.

¶26. In any event, the circuit court gave Colenberg an opportunity to question any advice that he received from his counsel. The circuit judge asked Colenberg:

THE COURT:             And did you read the petition?

THE DEFENDANT:      Yes, ma'am.

THE COURT:             Did Mr. Blackmon explain everything to you?

THE DEFENDANT:      Yes, ma'am.

THE COURT:             Did you understand everything in the petition?

THE DEFENDANT:      Yes, ma'am.

¶27. Later in the hearing, the circuit judge specifically asked about the representation Colenberg had received, and Colenberg stated that he had been properly advised and that no one had promised him anything or threatened him. For these reasons, the circuit court did not err when it found that the plea petition corrected or contradicted Colenberg's expectation or misinformation, if any. The plea petition and plea hearing, when combined, support the circuit court's conclusion that Colenberg failed to show by a preponderance of the evidence that his plea was involuntary and that Blackmon did not provide ineffective assistance. *Cf.*

14

*Sylvester*, 113 So. 3d at 624 (¶¶21-24).

## CONCLUSION

¶28.    The circuit court did not err by concluding that the record established a factual basis for the plea or by finding that Colenberg knowingly, intelligently, and voluntarily pled guilty. Therefore, we affirm the circuit court's order denying Colenberg's PCR motion.

¶29.    **AFFIRMED.**

**CARLTON, P.J., GREENLEE, LAWRENCE AND SMITH, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., McCARTY AND EMFINGER, JJ. McDONALD, J., NOT PARTICIPATING.**

**WILSON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶30.    I concur with the majority's holding in Part I that the record establishes a "minimally sufficient . . . factual basis for the plea." *Ante* at ¶18.  However, I respectfully dissent from Part II, affirming as to Colenberg's involuntary plea and ineffective assistance claims.  The circuit judge did not make sufficient findings of fact to support her ruling on those claims. Specifically, the judge declined to make a finding as to whether Colenberg's plea counsel misadvised him, reasoning that "[e]ven if [counsel] gave incorrect advice," any misinformation was corrected in Colenberg's plea petition and during his plea hearing. However, Colenberg's plea colloquy and plea petition did not address his eligibility for trusty time or other forms of earned time.  Therefore, in order to rule on Colenberg's claims, the judge needed to determine whether Colenberg's plea counsel provided incorrect advice, and, if so, whether Colenberg pled guilty in reliance on the misinformation.  Because the circuit judge failed to make findings of fact on those critical issues, we should reverse and remand

15

for further proceedings limited to those issues.

¶31.    Prior to accepting a guilty plea, a circuit judge is *not* required to advise a defendant regarding his eligibility for parole, trusty time, or other forms of earned time or early release. *Manuel v. State*, 304 So. 3d 713, 717 (¶¶10-11) (Miss. Ct. App. 2020).  Such an explanation is not a prerequisite to a voluntary, valid guilty plea.  *Id.*  However, "a plea is considered involuntary if the defendant's attorney affirmatively misinformed him regarding his eligibility for earned time or trusty time, the attorney's erroneous advice was not corrected, and the defendant pled guilty in reliance on the erroneous advice."  *Id.* at (¶11); *accord Sylvester v. State*, 113 So. 3d 618, 623-24 (¶¶19-20) (Miss. Ct. App. 2013); *Ulmer v. State*, 292 So. 3d 611, 613-16 (¶¶8-15) (Miss. Ct. App. 2020).

¶32.    In the present case, Colenberg alleges that his plea counsel, Blackmon, advised him that he "would be eligible for [t]rusty [e]arned [t]ime and . . . would receive 30 days' credit for every 30 days [he] served."  Colenberg claims that Blackmon also said that he could "reduce [his] time" further by taking classes while in prison.  Colenberg states that Blackmon told him that he "would only have to serve 12 years" if he earned trusty time and other forms of earned time.  After he entered prison, however, Colenberg learned that he would not be eligible for trusty time or other forms of earned time.[5]  Colenberg alleges that if Blackmon

---

[5] Pursuant to MDOC policy, Colenberg currently is not eligible for earned time, trusty time, or meritorious earned time. *See* MDOC Inmate Handbook, ch. III, at 6-7 (providing that inmates convicted of second-degree murder are ineligible for meritorious earned time and trusty time); *id.*, ch. V, at 10-11 (providing that inmates convicted of second-degree murder are ineligible for earned time), https://www.mdoc.ms.gov/Inmate-Info/Pages/Inmate-Handbook.aspx (June 2016).  By statute, he also is ineligible for parole.  Miss. Code Ann. § 47-7-3(1)(d) (Supp. 2021).

16

had advised him correctly, he "would not have pled guilty to any charges and . . . definitely would have gone to trial." Colenberg alleges that Blackmon's erroneous advice rendered his plea involuntary and amounted to constitutionally ineffective assistance of counsel.

¶33. Colenberg did not testify at his PCR hearing, apparently because he wanted to avoid further incriminating himself. However, the sworn statement that he submitted in support of his PCR motion was entered into evidence. In addition, Colenberg's father and sister both corroborated Colenberg's claims through affidavits and live testimony. They testified that they were present and overheard Blackmon give Colenberg incorrect advice regarding his eligibility for trusty time and his ability to earn an early release. They also testified that Colenberg would not have pled guilty but for the incorrect advice.

¶34. Blackmon testified at Colenberg's PCR hearing and denied that he told Colenberg that he would be eligible for trusty time or any other form of earned time. Indeed, Blackmon denied that he ever discussed trusty time or any other form of earned time with Colenberg. Blackmon stated that MDOC and the Legislature can always change the rules regarding eligibility for such programs, "and those rules change often." Therefore, Blackmon stated that as a general policy, he will not advise clients regarding their eligibility for such programs. In fact, Blackmon said he was "not even sure how [the trusty] system works."

¶35. Ultimately, the circuit judge did not make any finding of fact as to whether Blackmon gave Colenberg incorrect advice. Rather, the circuit judge reasoned that

> [e]ven if Attorney Blackmon gave incorrect advice (i.e., serving 8-12 years of a 20-year sentence) that rose to the level of a deficient performance, the deficient performance was not prejudicial to the outcome of Mr. Colenberg's case because it was cured by this court during its final remarks at the plea

17

hearing as well as in the [plea petition], sworn to and signed by Mr. Colenberg, that earned time is under the authority of the [MDOC].

¶36. The circuit judge erred by avoiding a critical factual issue—whether Blackmon gave incorrect advice. The judge erred because Blackmon's alleged incorrect advice would *not* have been "cured" by the court's "final remarks at the plea hearing" or the plea petition. First, the court's "final remarks at the plea hearing" had nothing to do with Colenberg's eligibility for trusty time or earned time. Those remarks were as follows:

BLACKMON: Your Honor, if I may, I don't know if the Court can address this at this time, but I just wanted the record to reflect Mr. Colenberg's, I guess, request or inquiry. He has been -- since he's been released, he's been on bond. The bond did have restrictions on him for reference to time and place where he could be. The inquiry is whether or not that would count as time served. It may be something the [MDOC] might have to resolve.

THE COURT: Yes, sir. And I think they'll make that determination. Once I place him in their custody, at that point, you know how this works, they have their own rules and regulations. So they'll determine that.

Here, counsel simply inquired whether the time that Colenberg was out on bond subject to restrictions could be credited to him as "time served." In response, the judge simply stated that MDOC would make that determination. This exchange did nothing to inform Colenberg that he was categorically ineligible for trusty time and other forms of earned time. Therefore, it would not have cured or corrected counsel's alleged incorrect advice.[6]

---

[6] In addition, this exchange occurred at the very end of the hearing—after the court had already accepted Colenberg's plea and pronounced his sentence. Logically, a judge's post-sentencing remarks cannot cure an involuntary plea that has already been entered. *Cf. Haney v. State*, 281 So. 3d 84, 90 (¶20) (Miss. Ct. App. 2019) (reasoning that a defendant "clearly did not plead guilty in reliance" on comments the judge made after the judge had

18

¶37. Second, Colenberg's plea petition also would not have cured or corrected the alleged incorrect advice. The plea petition did advise Colenberg that "no one [could] assure [him] of parole or early release," that the circuit court "ha[d] no control over the giving of earned time or good time," and that those matters were "governed by [MDOC]." However, nothing in the plea petition advised Colenberg that he was categorically *ineligible* for trusty time or other forms of earned time. Thus, if Colenberg's attorney did incorrectly advise him that he was eligible for trusty time and could earn his release in eight to twelve years, there was nothing in the plea petition that would have corrected that misinformation. *Manuel*, 304 So. 3d at 717-18 (¶14).

¶38. In summary, Colenberg was not advised in his plea petition or during his plea hearing that he was *ineligible* for trusty time or other forms of earned time. Therefore, if Blackmon incorrectly advised Colenberg on that subject, the misinformation would not have been cured or corrected by the plea petition or during the plea hearing. Once Colenberg supported this claim with affidavits and the testimony of additional witnesses, it became necessary for the circuit judge to make findings of fact sufficient to decide the claim. Specifically, the circuit judge needed to determine whether Blackmon misadvised Colenberg and, if so, whether Colenberg pled guilty in reliance on the misinformation. The circuit judge erred by declining to address those factual issues and by holding that Colenberg's claims failed "[e]ven if Attorney Blackmon gave incorrect advice." Accordingly, we should reverse and remand for further proceedings limited to those issues.

---

already accepted the defendant's plea and pronounced the defendant's sentence).

¶39. Of course, "the trial court sits as finder of fact in a [PCR] proceeding" when, as in this case, "the evidence on a critical point is in conflict." *Henderson v. State*, 769 So. 2d 210, 213 (¶8) (Miss. Ct. App. 2000). "When conflicting evidence capable of more than one reasonable interpretation is presented to the court, the trial judge, as with any finder of fact, is entitled to determine the credibility of the witnesses and the weight to afford their testimony." *Dickerson v. State*, 291 So. 3d 344, 353 (¶36) (Miss. 2020); *accord Shelby v. State*, 311 So. 3d 613, 622 (¶39) (Miss. Ct. App. 2020), *cert. denied*, 310 So. 3d 830 (Miss. 2021). Therefore, the circuit judge in this case was entitled to weigh the conflicting evidence and determine whether Colenberg had met his burden of proving his claim by a preponderance of the evidence. *See Doss v. State*, 19 So. 3d 690, 694 (¶5) (Miss. 2009); Miss. Code Ann. § 99-39-23(7) (Rev. 2020). What the circuit judge could *not* do was decline to resolve the critical factual issues that Colenberg's claims raised.

¶40. In summary, while I concur with the majority that there was a minimally sufficient factual basis for Colenberg's plea, I would reverse and remand for the circuit judge to determine whether Blackmon incorrectly advised Colenberg regarding his eligibility for trusty time and other forms of earned time and, if so, whether Colenberg pled guilty in reliance on the misinformation. Accordingly, I respectfully dissent in part.

**BARNES, C.J., McCARTY AND EMFINGER, JJ., JOIN THIS OPINION.**